UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SALVADOR SANDOVAL ORTEGA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AHO ENTERPRISES, INC., et al.,<br><br>    Defendants. | Case No. 19-cv-00404-DMR<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION**<br><br>Re: Dkt. No. 47 |

Plaintiffs Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Godoy Ramirez, Eduardo Rodriguez, Rodolfo Vazquez, Daniel Valencia, and Jose Valencia bring federal and state law wage and hour claims against Defendants Aho Enterprises, Inc. dba Superior Body Shop, Jack Aho, Issa Aho, and Hani Aho on behalf of themselves and a putative class of current and former non-exempt employees. Plaintiffs allege that Defendants failed to pay them and the putative class members overtime pay, failed to provide meal and rest breaks, and failed to provide accurate itemized wage statements and final pay. Plaintiffs now move pursuant to Federal Rule of Civil Procedure 23(b)(3) to certify three subclasses and for conditional certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). [Docket No. 47.] The court held a hearing on July 23, 2020. For the following reasons, the motion is granted in part and denied in part. The court grants certification of the overtime pay and rest break subclasses and the related derivative claims for failure to pay wages at termination or resignation and failure to provide accurate wage statements, and denies certification of the meal break subclass. The court also certifies an FLSA collective action.

## I. BACKGROUND

### A. Factual Background

Defendant Aho Enterprises, Inc. ("Aho Enterprises") does business as Superior Body Shop ("Superior"), an automobile body repair business in San Carlos, California. Defendants Jack Aho, Issa Aho, and Hani Aho are brothers who own and operate Aho Enterprises. [Docket No. 64-3 (J. Aho Decl., June 18, 2020) ¶ 2.] Superior employs individuals as production workers to perform repair work on cars. Production workers include technicians, technician helpers, detailers, painters, and painter helpers. [Docket No. 48-2 (Hanhan Dep., "PMK Dep.") 43-45.] There are between 20 and 30 individuals employed as production workers in any given month. *Id*. at 45. Until sometime in 2019, production workers tracked their hours worked using a time clock and physical timecards that they used to clock or "punch" in and out for their shifts. Superior ceased using a time clock in 2019, and now tracks production workers' hours by computer instead of using a time clock and physical timecards. PMK Dep. 8-9, 13. The end date for each of Plaintiffs' proposed classes and subclasses is September 30, 2019.

#### 1. Overtime

Superior's Employee Handbook contains a provision governing overtime for non-exempt employees. *See* PMK Dep. Ex. 9 (Employee Handbook, updated Oct. 1, 2015) at 36. It provides in relevant part that "[a]ll hours worked in excess of eight hours in one workday or 40 hours in one workweek will be treated as overtime," and that "[c]ompensation for hours in excess of 40 for the workweek, or in excess of eight and not more than 12 for the workday, . . . shall be paid at a rate one and one-half times the employee's regular rate of pay[.]" *Id*.

Superior's designated Rule 30(b)(6) deponent, Mary Hanhan, is responsible for calculating the production workers' hours to calculate payroll. *See* PMK Dep. 22-29. She testified that despite the foregoing provision in the Employee Handbook, she paid overtime for hours worked in excess of 40 per week only ("weekly overtime"), and admitted that she did not pay overtime for hours worked in excess of eight per day ("daily overtime"). *Id*. at 30-31 ("I was paying 40 hours a week per week and anything above that is overtime."), 80. Hanhan's practice of paying only weekly overtime was in place from 2013 until 2019. *Id*. at 31.

1    Employees also had a second physical timecard that they used to record additional hours
2    worked, including hours worked on weekends. The second timecards were referred to as "cash
3    cards." Superior paid employees for hours recorded on the cash cards in cash at the employee's
4    regular hourly rate. PMK Dep. 31, 35-36, 41-42. Employees did not receive wage statements for
5    the cash payments and Superior does not have records of the cash cards or cash payments for the
6    hours recorded on the cash cards. *Id*. at 38-39, 99. Hanhan testified that Superior ended the cash
7    card practice in 2017. *Id*. at 41.

### 2. Meal and Rest Breaks

9    During the period when Superior's employees used a time clock and physical timecards,
10   production workers clocked out and then back in for an unpaid "lunch" break in the middle of the
11   day. *See* PMK Dep. 22; *see, e.g.*, PMK Dep. Exs. 3, 4 (showing four time entries per day).
12   Plaintiffs contend that this mid-day break lasted for only 30 or 40 minutes and was the sole break
13   they were permitted to take during the day. [Docket Nos. 48-9 (D. Valencia Decl., Mar. 10, 2020)
14   ¶ 5; 48-11 (E. Rodriguez Decl., Mar. 12, 2020) ¶¶ 4-5; 48-13 (Henriquez Decl., Mar. 12, 2020) ¶
15   5; 48-14 (Alaniz Decl., Mar. 13, 2020) ¶ 4; 48-16 (Correa Martinez Decl., Mar. 13, 2020) ¶¶ 5-7;
16   48-17 (Sandoval Ortega Decl., Mar. 13, 2020) ¶ 5; 48-19 (J. Valencia Decl., Mar. 7, 2020) ¶ 5; 48-
17   21 (Godoy Ramirez Decl., Mar. 12, 2020) ¶¶ 3, 5; 48-23 (N. Rodriguez Decl., Mar. 7, 2020) ¶ 5;
18   48-24 (Vasquez Decl., Mar. 13, 2020) ¶ 5.]

19   Hanhan testified that when calculating hours worked, she credited production workers with
20   approximately 25 minutes per day, or .4 of an hour, in addition to their actual hours worked. This
21   credit represented "rest break pay" for a 15-minute rest break in the morning and a 10-minute rest
22   break in the afternoon, even though production workers did not have to punch in and out for rest
23   breaks and thus any time taken for rest breaks was theoretically time worked. *See* PMK Dep. 22-
24   24, 28 (describing subtracting 25 minutes from the time taken for the clocked-out lunch break,
25   resulting in a credit of 25 minutes); J. Aho Decl. ¶ 10. Hanhan's practice of crediting employees
26   for an additional 25 minutes per day for breaks ended in April 2019 when her supervisors
27   discovered the error. J. Aho Decl. ¶ 10; PMK Dep. 48 ("there's a few people that said we always
28   get paid the rest period, so I thought I am supposed to pay the rest period."). She also testified that

3

Superior never paid an hour's worth of pay to a production worker for a missed meal or rest break. PMK Dep. 60.

### B. Procedural History

Plaintiffs filed this putative class action on January 23, 2019. In the second amended complaint, which is the operative complaint, Plaintiffs plead the following claims for relief: 1) failure to pay overtime in violation of the FLSA; 2) failure to pay overtime in violation of California Labor Code sections 500, 510, 1194, and the applicable wage order; 3) failure to pay minimum wage in violation of California Labor Code sections 226, 226.6, 1194, 1194.2, 1197 and the applicable wage order; 4) failure to provide rest periods in violation of California Labor Code sections 203, 226, 226.7, 1194, and the applicable wage order; 5) failure to provide meal periods in violation of California Labor Code sections 203, 226, 226.7, 512, 1194, and the applicable wage order; 6) failure to pay wages at termination in violation of California Labor Code sections 201, 202, and 203; 7) failure to provide accurate and itemized wage statements in violation of California Labor Code sections 226, 1174, 1175, and the applicable wage order; 8) violation of California Business and Professions Code section 17200 et seq., the unfair competition law; and 9) civil penalties under the Private Attorneys General Act ("PAGA"), California Labor Code section 2698 et seq. [Docket No. 39 (2d Am. Compl.).]

### C. Motion for Class Certification and Certification of a Collective Action

Plaintiffs seek certification under Federal Rule of Civil Procedure 23 of a class of all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019. They also seek certification of three subclasses and two derivative subclasses.

Plaintiffs also seek conditional certification of the following FLSA collective action: All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2016 to September 30, 2019, who worked more than 40 hours a week.

Plaintiffs seek appointment of Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Godoy Ramirez, Eduardo Rodriguez, Rodolfo Vazquez, Daniel Valencia, and Jose Valencia as class representatives. They also move for appointment of Mallison & Martinez as class counsel.

## II. EVIDENTIARY OBJECTIONS

Plaintiffs' reply brief contains evidentiary objections to several of Defendants' supporting declarations. Reply 11-18. The objections are denied as moot, as the court did not rely on the disputed evidence in reaching its decision.

## III. CLASS CERTIFICATION

### A. Legal Standard

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). A plaintiff seeking class certification bears the burden of demonstrating that he or she has met each of the four requirements of Rule 23(a), and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001)); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to establishing numerosity, commonality, typicality, and adequacy, a plaintiff must establish one or more of the following grounds for maintaining the suit as a class action: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate, and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). In this case, Plaintiffs seek certification under Rule 23(b)(3), which requires

that "questions of law or fact common to class members predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The decision to certify a class is committed to the discretion of the district court. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). "The United States Supreme Court requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis*, 657 F.3d at 980 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). While this analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal quotation marks omitted)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.

**B.     Analysis**

Plaintiffs seek certification of a class of all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019. They also seek certification of the following three subclasses:

> (1) Overtime Pay Subclass, defined as all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked in excess of eight hours in any workday or 40 hours in a week without proper overtime pay;
>
> (2) Meal Period Subclass, defined as all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked shifts of at least six hours in any workday and were not paid meal period premiums for meals that were less than 30 minutes in length; and

> (3) Rest Period Subclass, defined as all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked shifts of at least three and one-half hours in any workday, who had their rest and meal periods combined.

Plaintiffs also move to certify two derivative subclasses under California Labor Code section 226 for Defendants' alleged failure to provide accurate wage statements, and under California Labor Code sections 201, 202, and 203 based on Defendants' alleged failure to pay all wages owed upon an employee's termination or resignation.

### 1. Numerosity, Typicality, and Adequacy

Plaintiffs must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Whether joinder would be impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (citation omitted). Courts have found 40 or more class members sufficient and 21 or fewer class members insufficient to satisfy numerosity. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

Here, Defendants' PMK testified that there are approximately 60 individuals who have worked in production in the past five years. PMK Dep. 45-46. Defendants contend that there are only 20-25 potential members of the overtime pay subclass, based on the number of workers who received pay in cash for hours documented on cash cards, and suggest that this is insufficient. *See* Opp'n 21. However, they do not offer authority supporting their argument that the numerosity analysis should be confined to an individual subclass, and there is no dispute that the requirement of numerosity is satisfied with respect to the class overall. *See id*. More importantly, the overtime pay subclass is not limited to those workers who were paid in cash at their straight time rate; it also includes workers who worked more than eight hours per day but were only paid overtime for hours worked in excess of 40 per week. *See* Mot. 13. At the hearing, Plaintiffs' counsel represented that approximately 40-50 production workers were underpaid due to the failure to pay

7

1  daily overtime. [*See also* Docket No. 65-1 (Mallison Decl. Jul. 6, 2020) ¶¶ 3, 4 (explaining that

2  there are "dozens" of examples of daily overtime underpayment in 2016-2019 timekeeping

3  records), Ex. 2 (2017 and 2018 examples).] In addition, Hanhan identified at least 25 individuals

4  that she remembers were paid in cash for hours recorded on cash cards in the last five years, which

5  supports Plaintiffs' representation that the total overtime class is substantially larger than the 20-

6  25 members indicated by the defense. PMK Dep. 65-66, Ex. 8. Therefore, the court concludes

7  that Plaintiffs have established numerosity.

8  Typicality requires that "the claims or defenses of the representative parties are typical of

9  the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is "'permissive' and

10 requires only that the representatives' claims are 'reasonably co-extensive with those of absent

11 class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105,

12 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020); *see also Lozano*, 504 F.3d at 734

13 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class

14 representative."). Thus, typicality is "satisfied when each class member's claim arises from the

15 same course of events, and each class member makes similar legal arguments to prove the

16 defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation omitted).

17 Plaintiffs' unpaid overtime claims are typical of the claims of the class they seek to

18 represent as they arise out of Defendants' practices of paying overtime for hours in excess of 40

19 per week only and cash payments for additional hours worked at workers' regularly hourly rate.

20 Their rest break claims are also typical of the absent class members' claims because they arise out

21 of Defendants' alleged practice of not authorizing and permitting lawful rest breaks under

22 California law and failing to pay rest period premiums for missed rest breaks. *See Falcon*, 457

23 U.S. at 156 ("a class representative must be part of the class and possess the same interest and

24 suffer the same injury as the class members." (quotation omitted)).[1]

25 Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately

---

[1] As discussed further below, the court concludes that Plaintiffs have not established that common questions predominate as to the meal break claims, and thus denies certification of that subclass. Accordingly, it need not address whether Plaintiffs' meal break claims are typical under Rule 23(a)(3).

8

1    protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process

2    concerns, absent class members must be afforded adequate representation before entry of a

3    judgment which binds them." *Hanlon*, 150 F.3d at 1020. To determine whether the adequacy

4    prong is satisfied, courts consider the following two questions: "(1) [d]o the representative

5    plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the

6    representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

7    *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted). Defendants do not

8    dispute that Plaintiffs meet Rule 23(a)'s adequacy of representation requirements. *See* Opp'n 18-

9    21. The court finds that Plaintiffs satisfy this requirement as there are no apparent conflicts of

10   interests between the class representatives and the absent class members, and both the class

11   representatives and class counsel have vigorously prosecuted this action during its pendency.

### 2. Commonality, Predominance, and Superiority

13   The remaining factors are Rule 23(a)(2)'s requirement of "questions of law or fact

14   common to the class" and Rule 23(b)(3)'s requirements that those common questions will

15   predominate over questions affecting only individual class members, as well as superiority of a

16   class action to other available methods for fairly and efficiently adjudicating the controversy.

17   Commonality requires that there be "questions of fact or law which are common to the

18   class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the

19   rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a

20   common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150

21   F.3d at 1019. "What matters to class certification . . . is not the raising of common 'questions'–

22   even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers*

23   apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have

24   the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (citation and

25   internal quotation marks omitted).

26   To meet the predominance requirement of Rule 23(b)(3), "the common questions must be

27   a significant aspect of the case . . . [that] can be resolved for all members of the class in a single

28   adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated*

*on other grounds, Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (quotation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims . . . then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013) (citation omitted).

The commonality inquiry is "subsumed under, or superseded by, the more stringent Rule 23(b)(3)" predominance inquiry. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (noting that "[t]hough there is substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding'" (quoting *Amchem*, 521 U.S. at 623-24). Accordingly, for efficiency, the court analyzes commonality and predominance together for each proposed subclass.

### a.  Overtime Pay Subclass

Plaintiffs define the overtime pay subclass as follows:

> All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked in excess of eight hours in any workday or 40 hours in a week without proper overtime pay.

Mot. 6.

Under California Labor Code section 510, employers must compensate employees at the rate of one and one-half times the regular rate of pay for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek." Cal. Lab. Code § 510(a). Therefore, in order to prevail on this claim, Plaintiffs must establish that they worked hours in excess of eight hours in one workday or in excess of 40 hours in a workweek and were not compensated for such work at the rate of one and one-half times the regular rate of pay.

10

1    On the second element, Defendants have admitted that from 2013 until 2019, Superior did
2 not compensate production workers with overtime pay for hours worked in excess of eight per day
3 in violation of California law, and instead calculated overtime for hours worked in excess of 40
4 per week only. Defendants also admitted that production workers used a separate timecard to
5 record additional hours worked, and that Superior compensated its employees for these hours at
6 their regular rate of pay and in cash. Therefore, the common question of whether Defendants paid
7 one and one-half times the regular rate of pay for overtime hours can be answered on a class-wide
8 basis based on Defendants' admitted practices.
9    Defendants' primary argument in opposition to the certification of the overtime pay
10 subclass goes to the first issue, which is whether Plaintiffs and the class members worked hours in
11 excess of eight per day and 40 per week. According to Defendants, Plaintiffs' overtime claim "is
12 marked by highly individualized proof" and that "[t]his will be a plaintiff by plaintiff trial."
13 Opp'n 16, 22. Essentially, Defendants' argument is that individualized inquiries about "hours
14 work[ed], about productivity, and about statute of limitations issues" would overcome any
15 common questions. *See id.* at 16. However, "damages determinations are individual in nearly all
16 wage-and-hour class actions," and it is well-established that predominance is not defeated due to
17 the necessity of individualized inquiries at the damages stage of litigation. *Leyva v. Medline*
18 *Indus. Inc.*, 716 F.3d 510, 513, 514 (9th Cir. 2013); *see also Vaquero v. Ashley Furniture Indus.,*
19 *Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("the need for individualized findings as to the amount
20 of damages does not defeat class certification." (citation omitted)). To be sure, "plaintiffs must be
21 able to show that their damages stemmed from the defendant's actions that created the legal
22 liability." *Leyva*, 716 F.3d at 514. In this case, if Plaintiffs and the putative class members
23 establish Defendants' liability for unpaid overtime, "damages will be calculated based on the
24 wages each employee lost due to [Superior's] unlawful practices." *See id.* As to daily overtime,
25 this can be calculated based on the putative class members' timecards, which reflect the total
26 number of hours worked per day. As to the hours worked that were recorded on cash cards,
27 Hanhan admitted that she did not keep the cash cards and does not have records of cash payments.
28 PMK Dep. 39. Accordingly, damages may be established using representative evidence, such as

11

putative class members' testimony, employee records, and a representative or statistical sample. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (declining to establish a categorical rule against the use of "representative evidence" in class actions).

Defendants also argue that the class period is overbroad, asserting that there is no evidence that cash payments for hours recorded on cash cards continued past 2017. This issue rests on the assumption that Plaintiffs' overtime claims are limited to the cash card issue, which is incorrect. Defendants admit that until 2019, Superior paid production workers overtime pay for weekly overtime only, not daily overtime, and Plaintiffs present evidence that production workers worked hours in excess of eight per day after 2017. *See* Mallison Decl. ¶¶ 3, 4. Accordingly, the class period is not overbroad as Plaintiffs' overtime claims continue until 2019.

Rule 23(b)(3) also requires a plaintiff to establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "That common questions predominate demonstrates that a class action would be a superior method of adjudication." *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2017 WL 6373020, at *16 (N.D. Cal. Dec. 13, 2017) (citations omitted). Here, resolving overtime claims across a class will be far more efficient than resolving such claims in individual lawsuits. The court concludes that a class action is superior to other methods for adjudicating this dispute.

In sum, Plaintiffs have established that certification of the overtime pay subclass is appropriate.

### b.     Rest Break Subclass

Plaintiffs define the rest break subclass as follows:

> All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked shifts of at least three and one-half hours in any workday, who had their rest and meal periods combined.

Mot. 7.

California law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018

1  (2012). Labor Code section 226.7 provides that an "employer shall not require an employee to
2  work during a meal or rest or recovery period mandated pursuant to an applicable statute, or
3  applicable regulation, standard, or order of the Industrial Welfare Commission ["IWC"]." Cal.
4  Lab. Code § 226.7(b). If an employer fails to provide an employee with a rest period in
5  accordance with state law, "the employer shall pay the employee one additional hour of pay at the
6  employee's regular rate of compensation for each workday that the . . . rest or recovery period is
7  not provided." Cal. Lab. Code § 226.7(c).

Plaintiffs contend that their employment is regulated by IWC Wage Order 9-2001, which applies to the transportation industry. *See* Mot. 15. The applicable wage order contains the following provision regarding rest periods:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

Cal. Code Regs. tit. 8, § 11090(12)(A). Employees who work shifts lasting more than six hours up to 10 hours are entitled to 20 minutes of rest break time. *Brinker*, 53 Cal. 4th at 1029 (analyzing identical rest period provision in Wage Order No. 5). "An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry." *Id.* at 1033.

As to the timing of rest breaks, employers must "make a good faith effort to authorize and permit rest breaks in the middle of each work period, but may deviate from that preferred course where practical considerations render it infeasible." *Id.* at 1031. "[I]n the context of an eight-hour shift, as a general matter, one rest break should fall on either side of the meal break." *Id.* at 1032 (quotation marks and alteration omitted). In *Rodriguez v. E.M.E., Inc.*, 246 Cal. App. 4th 1027, 1031 (2015), the court considered the lawfulness of an employer's practice of providing a "combined" 20-minute rest break in an eight-hour shift, instead of two 10-minute breaks in the middle of each work period. The court concluded that the wage order does not "conclusively bar"

13

1  such a combined rest break, but held that "a departure from the preferred schedule is permissible
2  only" upon a showing that the departure "(1) will not unduly affect employee welfare and (2) is
3  tailored to alleviate a material burden that would be imposed on the employer by implementing the
4  preferred schedule." *Id.* at 1040, 1044.

5  Here, Plaintiffs present evidence that the sole break they were permitted to take during the
6  workday was one 30-40 minute combined meal and rest break in the middle of a shift, and that
7  they were not permitted to take additional rest breaks. They contend that Defendants' practice of
8  "only providing one 'break' for which Plaintiffs and the class were required to clock out . . . is
9  ambiguous and does not conform with California law" regarding rest and meal breaks. Mot. 16.
10 At the hearing, Plaintiffs clarified that their rest break claim is based on the argument that
11 Defendants' practice of combining rest breaks violated state law requiring separate 10-minute
12 breaks "fall[ing] on either side of the meal break." *Brinker*, 53 Cal. 4th at 1032. They argue that
13 Defendants' practices regarding combining rest breaks can be proven on a class-wide basis using
14 Defendants' own admissions, timekeeping records, and representative employee testimony about
15 breaks, and that the lawfulness of such a practice is a legal question common to all of the class
16 members.

17 Defendants dispute that Plaintiffs and the putative class were not permitted to take 10-
18 minute rest breaks. Defendants note the Employee Handbook contains a provision governing rest
19 periods. It states that employees are "allowed a paid 10-minute rest period for every four hours of
20 work or major portion thereof," and that supervisors will schedule rest periods. Employee
21 Handbook 36. Defendants also present declarations from two production workers who state that
22 they understood that they were permitted to take one ten-minute rest period in the morning and
23 one ten-minute rest period in the afternoon. [Docket Nos. 64-6 (Magee Decl., June 18, 2020) ¶ 3;
24 64-7 (Freeman Davis Decl., June 17, 2020) ¶ 3.] They also state that management never
25 discouraged them from taking rest breaks. Magee Decl. ¶ 5; Freeman Davis Decl. ¶¶ 4-5.

26 These arguments go to the merits of Plaintiffs' allegations about whether Defendants
27 authorized and permitted rest breaks in the middle of each work period; they do not go to whether
28 common questions predominate. Moreover, the existence of a formal, compliant policy is not

14

1  dispositive of the question of liability for failure to provide lawful breaks. *See Brinker*, 53 Cal.
2  4th at 1040. Employers are "required to authorize and permit the amount of rest break time called
3  for under the wage order" in the middle of each work period, and "an employer may not
4  undermine a formal policy of providing . . . breaks by pressuring employees to perform their
5  duties in ways that omit breaks." *Id.* at 1031, 1033, 1040. "Thus, for instance, even if an
6  employer has a formal policy that is compliant with California law, proof of an informal but
7  common scheduling policy that makes taking breaks extremely difficult, or other informal means
8  of exerting pressure to discourage taking meal and rest breaks, would be sufficient to establish
9  liability to a class." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695,
10 at *7 (N.D. Cal. Nov. 12, 2014) (discussing *Brinker*, 53 Cal. 4th at 1040).

11     If Plaintiffs establish that Defendants failed to comply with rest period timing
12 requirements, notwithstanding Superior's formal written policy regarding breaks, then they will
13 establish rest break violations for all of the putative class members. Further, Defendants have
14 conceded that they never paid an hour's worth of pay for a missed rest break. PMK Dep. 60.
15 Therefore, Plaintiffs have established a common issue that predominates over individual issues, as
16 all putative class members will seek a determination of the lawfulness of Defendants' alleged rest
17 break practices.

18     For the same reasons set forth above, the court finds that Plaintiffs have also established
19 that a class action is superior to other methods of adjudicating the rest break dispute and concludes
20 that certification of the rest break subclass is appropriate.

21                        **c.**     **Meal Break Subclass**
22     Plaintiffs define the meal break subclass as follows:

23 > All non-exempt production employees, including body shop
24 > technicians, technician helpers, detailers, painters, and painter
> helpers, who were employed by Aho Enterprises, Inc. in the State of
25 > California at any time from January 23, 2015 to September 30,
> 2019, who worked shifts of at least six hours in any workday and
26 > were not paid meal period premiums for meals that were less than
> 30 minutes in length.

27 Mot. 7.

28     Under California law, employers must provide employees with a 30-minute meal period

15

when they work more than five hours per day, unless the total number of hours worked is six hours or less. Cal. Lab. Code § 512(a); *see also* Cal. Code Regs. tit. 8, § 11090(11)(A). The meal period must be provided "no later than the end of an employee's fifth hour of work." *Brinker*, 53 Cal. 4th at 1041. "The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id*. at 1040. If an employer fails to provide an employee with a meal period in accordance with state law, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." Cal. Lab. Code § 226.7(c).

Plaintiffs' theory of liability for the meal break claim was not clearly stated in their motion. Further, the majority of the timecards they submitted appear to indicate that putative class members clocked out at around mid-day for at least 30 minutes for the alleged combined meal and rest break. [*See* Docket No. 48-1 (Garcia Decl., Mar. 13, 2020) ¶¶ 23-26, Exs. 4-7).] Based on these timecards, it appears that Defendants generally provided the production workers with 30-minute breaks.

When asked to explain the basis for the purported meal break violation at the hearing, Plaintiffs' counsel's answer was convoluted. Counsel referred to Hanhan's payroll practice of crediting workers with 25 minutes per day as "rest break pay" by subtracting 25 minutes from the amount of time clocked out for the mid-day break. By crediting workers in this way, he explained, Defendants characterized 25 minutes of the mid-day break as "hours worked," which resulted in meal period violations common to the putative class members. Plaintiffs' argument is as follows: the wage order provision regarding rest breaks states that "[a]uthorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." Cal. Code Regs. tit. 8, § 11090(12)(A). Even though the timecards generally show that workers clocked out for at least 30 minutes in the middle of their shifts, Defendants paid workers for 25 minutes of that time as "hours worked." As only rest period time "shall be counted as hours worked," Plaintiffs argue that by definition these breaks cannot be considered to be meal breaks. Importantly,

16

1  Plaintiffs do not contend that Superior failed to "relieve[ ] its employees of all duty, relinquish[ ]
2  control over their activities and permit[ ] them a reasonable opportunity to take an uninterrupted
3  30-minute break." *See Brinker*, 53 Cal. 4th at 1040.  Rather, the sole basis for the purported meal
4  break violation is based on the manner in which Defendants labeled or characterized meal breaks
5  for payroll purposes.
6        Essentially, Plaintiffs' position is that an otherwise-compliant 30-minute meal period
7  violates state law if any portion of it is paid by the employer as "hours worked" even if the
8  employee is not working during any of the meal period.  At the hearing, the court repeatedly asked
9  for authority to support this position.  Plaintiffs offered none, pointing only to the language of the
10 rest break provision in the wage order, a provision which does not address meal breaks.  The
11 applicable Labor Code provision that governs meal periods states only that "[a]n employer shall
12 not employ an employee for a work period of more than five hours per day without providing the
13 employee with a meal period of not less than 30 minutes."  The applicable wage order states that
14 "[u]nless the employee is relieved of all duty during a 30 minute meal period, the meal period
15 shall be considered an 'on duty' meal period and counted as time worked."  Cal. Lab. Code §
16 512(a); Cal. Code Regs. tit. 8, § 11090(11)(A).  Neither provision addresses how an employer
17 must characterize payment for time that an employee spends in a meal break, and neither prohibits
18 employers from paying employees for all or part of a meal break, which is what the evidence
19 shows happened here.
20       The sole common question for the meal break subclass is whether Defendants' practice of
21 compensating production workers for a portion of the mid-day break violated Defendants'
22 obligation to permit employees "a reasonable opportunity to take an uninterrupted 30-minute
23 break." *See Brinker*, 53 Cal. 4th at 1040.  In the absence of any authority that such a practice
24 violated state law, and in the absence of any other common questions of law or fact as to this
25 claim, the court concludes that Plaintiffs have failed to show that common questions predominate.
26 Certification of the meal period subclass is therefore denied.

#### d. Derivative Subclasses

28       As noted, Plaintiffs also move to certify two derivative subclasses under California Labor

17

1 Code section 226 for Defendants' alleged failure to provide accurate wage statements, and under
2 California Labor Code sections 201, 202, and 203 based on Defendants' alleged failure to pay all
3 wages owed upon an employee's termination or resignation.
4     Defendants argue that these derivative claims rise and fall with the overtime pay, rest
5 break, and meal break subclasses. Opp'n 22. Because the court concludes that certification of the
6 overtime pay and rest break subclasses is appropriate, certification is appropriate for the derivative
7 wage statement and failure to pay wages at the end of employment claims. *See, e.g.*, *Hernandez v.*
8 *Sysco Corp.*, No. 16-CV-06723-JSC, 2020 WL 533005, at *11 (N.D. Cal. Feb. 3, 2020),
9 *reconsideration denied,* No. 16-CV-06723-JSC, 2020 WL 1288347 (N.D. Cal. Mar. 18, 2020)
10 (certifying claims for failure to pay wages owed and failure to provide accurate wage statements
11 as derivative of certified claim for off-the-clock claim).

## IV. CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION

13     Plaintiffs next seek conditional certification of the following collective action under the
14 FLSA: All non-exempt production employees, including body shop technicians, technician
15 helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in
16 the State of California at any time from January 23, 2016 to September 30, 2019, who worked
17 more than 40 hours a week.

### A. Legal Standard

19     The FLSA provides that employees may bring a collective action on behalf of themselves
20 and other "similarly situated" employees. 29 U.S.C. § 216(b). "In contrast to class actions
21 pursuant to Rule 23 of the Federal Rules of Civil Procedure, potential participants in a collective
22 action under the FLSA must 'opt in' to the suit by filing a written consent with the court in order
23 to benefit from and be bound by a judgment." *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1028
24 (N.D. Cal. 2017) (citations omitted). "Employees who do not opt in are not bound by a judgment
25 and may subsequently bring their own action." *Id.* "Because class members must opt-in, the
26 standards for certifying a conditional FLSA class are considerably less stringent than those for
27 Rule 23 classes." *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at
28 *2 (N.D. Cal. Jan. 7, 2013) ("*Brewer I*").

"Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). "[A]n FLSA—specific, fact-intensive inquiry into whether plaintiffs are 'similarly situated' governs." *Brewer*, 2014 WL 5877695, at *14 (citations omitted). The FLSA does not define the term "similarly situated," and the Ninth Circuit has not defined the term. To assess whether plaintiffs are "similarly situated," courts in this circuit have applied a "two-step approach involving initial notice to prospective plaintiffs, followed by a final evaluation whether such plaintiffs are similarly situated." *Id.* at 467 (noting that the two-step approach is preferred). "The first step under the two-tiered approach considers whether the proposed class should be given notice of the action. This decision is based on the pleadings and affidavits submitted by the parties. The court makes this determination under a fairly lenient standard due to the limited amount of evidence before it[.]" *Santiago v. Amdocs, Inc.*, No. C 10-4317 SI, 2013 WL 5444324, at *3 (N.D. Cal. Sept. 30, 2013) (quoting *Adams v. Inter–Con Sec. Systs., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007)). "In the second step, the party opposing certification may move to decertify the class once discovery is complete and the case is ready to be tried." *Adams*, 242 F.R.D. at 536.

Plaintiffs bear the burden of showing that the plaintiffs are "similarly situated" for purposes of § 216(b). *Leuthold*, 224 F.R.D. at 466. "Courts have held that conditional certification requires only that plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Adams*, 242 F.R.D. at 536 (quotation omitted).

**B.      Discussion**

Federal law requires employers to pay non-exempt employees overtime for hours worked in excess of 40 in a week:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

19

1  29 U.S.C. § 207(a)(1).

2  Here, Plaintiffs allege that Defendants failed to compensate Plaintiffs and the putative class members at overtime rates for hours worked in excess of 40 per week. As discussed above, they have submitted evidence that Defendants admitted that they compensated production workers for hours worked in excess of 40 per week, including hours worked on weekends, in cash and at their regular rate of pay. Plaintiffs have also submitted declarations in which they confirm that they worked overtime, including hours on weekends, and were paid in cash at their regularly hourly rate. *See, e.g.*, Valencia Decl. ¶ 7; E. Rodriguez Decl. ¶ 8; Henriquez Decl. ¶¶ 9-10.

Accordingly, the court finds that Plaintiffs have satisfied their burden at the first stage to make "substantial allegations" that they and the putative class members "were subject to a single illegal policy." Conditional certification of the proposed FLSA class is thus appropriate.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification and for conditional certification of a collective action under the FLSA is granted in part and denied in part. The motion is granted as to Plaintiffs' overtime pay and rest break subclasses and the related derivative claims. It is also granted as to conditional certification of an FLSA collective action. Plaintiffs Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Godoy Ramirez, Eduardo Rodriguez, Rodolfo Vazquez, Daniel Valencia, and Jose Valencia are appointed as Class Representatives and Mallison & Martinez is appointed as Class Counsel. The parties shall meet and confer and submit a proposed class notice by no later than August 25, 2020.

**IT IS SO ORDERED.**

Dated: August 10, 2020



_____
Donna M. Ryu
United States Magistrate Judge