1
2
3
4             UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6
7   JOSE SALVADOR SANDOVAL          Case No.  19-cv-00404-DMR
    ORTEGA, et al.,
8
            Plaintiffs,             **ORDER ON MOTION FOR**
9                                   **PRELIMINARY APPROVAL OF A**
        v.                          **CLASS ACTION SETTLEMENT**
10
                                    Re: Dkt. No. 94
11  AHO ENTERPRISES, INC., et al.,
            Defendants.
12

13          Plaintiffs Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto

14  Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Godoy Ramirez, Eduardo Rodriguez,

15  Rodolfo Vazquez, Daniel Valencia, and Jose Valencia filed this action alleging wage and hour

16  claims under federal and state law against Defendants Aho Enterprises, Inc. dba Superior Body

17  Shop, Jack Aho, Issa Aho, and Hani Aho on behalf of themselves and a putative class of current

18  and former non-exempt employees.  In August 2020, the court certified two subclasses and two

19  derivative subclasses and certified a Fair Labor Standards Act ("FLSA") collective action.

20  Plaintiffs now move for preliminary approval of the parties' class action settlement agreement.

21  [Docket No. 94.]  The court ordered Plaintiffs to submit supplemental briefing in support of the

22  motion for preliminary approval, which Plaintiffs timely filed on October 12, 2021.  [Docket Nos.

23  97, 98 (Pls.' Supp. Br.).]  The court held a hearing on October 14, 2021 and ordered additional

24  supplemental briefing and evidence in support of the motion, and ordered Class Counsel to make

25  revisions to the proposed Class Notice.  [Docket No. 99.]  Plaintiffs timely filed the second round

26  of supplemental briefing, evidence, and revised proposed Class Notice.  [Docket Nos. 100, 101,

27  103.]  For the following reasons, the motion is granted.

28

United States District Court
Northern District of California

# I.    BACKGROUND

## A.    Factual Background

Defendant Aho Enterprises, Inc. ("Aho Enterprises") does business as Superior Body Shop ("Superior"), an automobile body repair business in San Carlos, California.  Defendants Jack Aho, Issa Aho, and Hani Aho are brothers who own and operate Aho Enterprises.  Superior employs individuals as production workers to perform repair work on cars.  Production workers include technicians, technician helpers, detailers, painters, and painter helpers.  [Docket No. 48-2 (Hanhan Dep., "PMK Dep.") 43-45.]  There are between 20 and 30 individuals employed as production workers in any given month.  *Id*. at 45.

Plaintiffs filed this action on January 23, 2019.  In the second amended complaint, which is the operative complaint, Plaintiffs plead the following claims for relief: 1) failure to pay overtime in violation of the FLSA, 29 U.S.C. § 201 *et seq*.; 2) failure to pay overtime in violation of California Labor Code sections 500, 510, 1194, and the applicable wage order; 3) failure to pay minimum wage in violation of California Labor Code sections 226, 226.6, 1194, 1194.2, 1197 and the applicable wage order; 4) failure to provide rest periods in violation of California Labor Code sections 203, 226, 226.7, 1194, and the applicable wage order; 5) failure to provide meal periods in violation of California Labor Code sections 203, 226, 226.7, 512, 1194, and the applicable wage order; 6) failure to pay wages at termination in violation of California Labor Code sections 201, 202, and 203; 7) failure to provide accurate and itemized wage statements in violation of California Labor Code sections 226, 1174, 1175, and the applicable wage order; 8) violation of California Business and Professions Code section 17200 *et seq*., the unfair competition law; and 9) civil penalties under the Private Attorneys General Act ("PAGA"), California Labor Code section 2698 et seq.  [Docket No. 39 (2d Am. Compl., "SAC").]

Plaintiffs moved for certification under Federal Rule of Civil Procedure 23 of a class of all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019.  They also sought certification of three subclasses and two derivative subclasses.  Plaintiffs also sought conditional

2

United States District Court
Northern District of California

certification of the following FLSA collective action: All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2016 to September 30, 2019, who worked more than 40 hours a week. [Docket No. 47.]

On August 10, 2020, the court granted in part and denied in part the motion for class certification. *Sandoval Ortega v. Aho Enterprises, Inc.*, No. 19-CV-00404-DMR, 2020 WL 4584227 (N.D. Cal. Aug. 10, 2020). The court certified the following subclasses:

> **Overtime Pay Subclass:** All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked in excess of eight hours in any workday or 40 hours in a week without proper overtime pay.

> **Rest Period Subclass:** All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2015 to September 30, 2019, who worked shifts of at least three and one-half hours in any workday, who had their rest and meal periods combined.

*Id*. at *7, 9, 12.

The court also certified two derivative subclasses under California Labor Code section 226 for Defendants' alleged failure to provide accurate wage statements, and under California Labor Code sections 201, 202, and 203 based on Defendants' alleged failure to pay all wages owed upon an employee's termination or resignation. *Id*. at *10.

Additionally, the court conditionally certified the following collective action under the FLSA: all non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Aho Enterprises, Inc. in the State of California at any time from January 23, 2016 to September 30, 2019, who worked more than 40 hours a week. *Id*.

The court appointed Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Godoy Ramirez, Eduardo Rodriguez, Rodolfo Vazquez, Daniel Valencia, and Jose Valencia as Class Representatives. It appointed Mallison & Martinez as Class Counsel. *Id*. at *12.

### B.      Litigation History

Class Counsel represents that they "conducted extensive due diligence" prior to filing the complaint.  [Docket No. 94-2 (Mallison Decl., Aug. 23, 2021) ¶ 15.]  This included reviewing documents provided by Plaintiffs and interviewing them in detail regarding their work at Superior and Defendants' wage payment practices.  *Id*.  After filing the complaint, Plaintiffs conducted written discovery and deposed Defendants' person most knowledgeable ("PMK").  Plaintiffs reviewed Defendants' payroll and timekeeping records and "assembled a comprehensive damages model."  *Id*. at ¶ 16.

In April 2020, the parties attended a mediation session before Judge Kevin Murphy (ret.).  In October 2020, after the court's order on class certification, the parties attended a second mediation session before Judge Murphy.  *Id*. at ¶¶ 19.  The case did not settle.  The parties participated in a settlement conference before Chief Magistrate Judge Joseph C. Spero on February 25, 2021 at which they reached an agreement in principle to settle the case.  *Id*.  *See also* Docket No. 86.  The parties executed a long-form settlement agreement in August 2021.  Mallison Decl. ¶ 22, Ex. 1 (the "Settlement Agreement").

## II.      TERMS OF THE SETTLEMENT

### A.  Proposed Class and Monetary Relief

The Settlement Agreement defines "Class" to mean "the combined class members in the Lawsuit," set forth as follows:

> All non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Defendants in the State of California at any time from January 23, 2015 to September 30, 2019.

Settlement Agreement § I.A.

Defendants agree to pay a total of $1,100,000 (the "Gross Settlement Amount") to create a non-reversionary Qualified Settlement Fund created by the Settlement Administrator.  Defendants will pay the Gross Settlement Amount to the Settlement Administrator in installments, as follows: Defendants will pay the initial sum of $400,000 within 20 days of final approval and pay the balance in eight quarterly payments of $75,000 (totaling $600,000), with a final payment of $100,000 due no later than 820 days after final approval.  *Id*. at §§ III.A; III.B.  The following will

4

United States District Court
Northern District of California

be deducted from the Gross Settlement Amount: 1) "Class Representative Payments" of up to

$7,500 to each of the ten Class Representatives; 2) Class Counsel's attorneys' fees, not exceeding

one-third of the Gross Settlement Amount ($366,667) and litigation expenses not exceeding

$12,000; 3) the Settlement Administrator's fees and expenses, estimated at $3,499; and 4)

payment of up to $37,500 to the Labor Workforce Development Agency ("LWDA") to settle the

PAGA claim asserted in the SAC. *Id*. at § III.C; Mot. 5. *See also* Docket No. 95 (2d Mallison

Decl., Sept. 3, 2021) ¶ 3 (describing proposed administrator's bid of $3,499 to administer

settlement). The remainder following those deductions, approximately $605,334, constitutes the

Net Settlement Amount from which individual class members will be paid "Settlement Shares."

Settlement Agreement §§ I.P; I.X.

The Settlement Agreement contains a provision that in the event "the final number of

workweeks increase[s] by more than 5% prior to final approval of the settlement, then the [Gross

Settlement Amount of $1,100,000] will increase on a prorated basis based upon the percentage

increase in additional work weeks." *Id*. at I.A.3.

The Settlement Administrator will pay a Settlement Share from the Net Settlement

Amount to Participating Class Members[1] based on a "tiered pro rata share of the balance of the

Net Settlement Amount." *Id*. at § III.E.1. The Settlement Share for each Participating Class

Member will be calculated as follows:

> The Settlement Share for each Participating Class Member will be
> based on (a) that Participating Class Member's total number of
> workweeks in which the Class Member was employed by Defendants
> during the Class Period (b) divided by the aggregate number of
> workweeks for Defendants of all Participating Class Members during
> the Settlement Class Period (c) multiplied by the value of the Net
> Settlement Amount.

*Id*.

Participating Class Members do not have to submit a claim form in order to receive a

Settlement Share; the Settlement Administrator will mail settlement checks to all Class Members

[1] "'Participating Class Member' means a Class Member who does not submit a valid and timely
Election Not to Participate in Settlement." Settlement Agreement § I.S.

5

United States District Court
Northern District of California

who do not timely exclude themselves from the settlement.  The Settlement Administrator will make two distributions of the Net Settlement Amount to Participating Class Members.  *Id*. at § III.C.5.  The first distribution will be made following the second quarterly payment, at which time the Qualified Settlement Fund will equal $550,000.  The first distribution will include all Class Representative Payments approved by the court; the entire payment to the LWDA; and a first pro rata distribution to Participating Class members.  *Id*. at § III.C.5(a).  Participating Class Members will have 180 days from the issuance date to cash the settlement checks.  *Id*.  The 180-day expiration date of the checks will be printed on the face of the checks.  [Docket No. 100 (4th Mallison Decl., Oct. 21, 2021) ¶ 4.][2]  Any Participating Class Members who have not cashed the checks 145 days after issuance will receive a reminder postcard from the Settlement Administrator.  If the Settlement Administrator re-issues a settlement check after the initial distribution, the recipient will have an additional 180 days to cash the check but the Settlement Administrator will not mail reminder postcards for re-issued checks.  Any uncashed checks which remain uncashed as of the date of the second and final distribution will be added to the distribution to the remaining Participating Class Members on a pro rata basis.  Settlement Agreement § III.C.5.a.

The second distribution will take place after the final payment is made by Defendants into the Qualified Settlement Fund, which is no later than 830 days after the date of Final Approval. The second distribution will include payment of Class Counsel fees and expenses; payment of the Settlement Administrator's expenses; and a second pro rata distribution to the Participating Class Members.  *Id*. at § III.C.5(b).  Any checks that remain uncashed after 90 days of the final distribution will be voided and the amount will be allocated to a suitable cy pres recipient.  *Id*. Class Counsel states that they will propose California Rural Legal Assistance ("CRLA") and/or Legal Aid at Work ("LAAW") as cy pres recipients at final approval.  Mallison Decl. ¶ 27.

The Class Representative Payments will be treated and allocated as follows: 10% as wages

---

[2] Class Counsel states "that the 90-day expiration period of class member settlement checks will be printed on the face of said checks."  3d Mallison Decl. ¶ 4.  The court assumes the reference to 90 days is a typographical error, since the settlement agreement provides that Class Members have 180 days from the date of issuance to cash checks.  Settlement Agreement § III.C.5.a.i.

reportable on IRS W-2 forms and 90% as penalties and interest reportable on IRS Form 1099. Settlement Agreement § III.D.

### B.   Release

The Settlement Agreement contains the following release provision regarding Participating Class Members:

> **Participating Class Members.** In consideration of their Settlement Share and other terms and conditions of this Agreement, each Class Member who does not submit a timely and valid Election Not to Participate in Settlement, shall, upon the Effective Date, be deemed to have released Defendants, their and its current and former agents co-employers, and its related entities, spouses, owners, board members, alter egos, predecessors, successors and assigns from all claims alleged in the operative complaint in the Action, and any additional wage-and-hour claims that could have been brought based on the facts alleged therein, through the date of Preliminary Approval ("Released Matters").

Settlement Agreement § III.G.3. "Effective Date" is defined as seven calendar days after all of seven conditions are satisfied, including mailing of the Class Notice, expiration of the opt-out deadline as defined in the Class Notice, fewer than 10% of the Settlement Class Members submit timely and valid requests to opt out of the Settlement Class, and final approval of the proposed settlement. *Id*. at § I.K.

Plaintiffs separately agree to release "any and all known or unknown claims" arising on or before the date they signed the Settlement Agreement and through the date of preliminary approval. *Id*. at III.G.1.

### C.   Notice to the Class Members

Within 14 calendar days of preliminary approval, Defendants will provide the Settlement Administrator with the names, most recent mailing address and telephone number, Social Security number, and the number of workweeks each Class Member worked during the applicable period. Settlement Agreement § III.F.2(a). Within ten days after receipt of this information, the Settlement Administrator will mail the Class Notice to Class Members via first-class U.S. Mail and email, where email addresses are available. Class Members will have 40 calendar days from the mailing of the Class Notice to submit "Elections Not to Participate" or objections. *Id*. at §

United States District Court
Northern District of California

III.F.2(c).

Prior to mailing, the Settlement Administrator will update the mailing address information using a national database.  Notices returned with a forwarding address will be re-mailed to the new address via United States Mail.  If a notice is returned without a forwarding address, the Settlement Administrator will perform a skip trace search to obtain an updated address.  *Id*. at § III.F.2(b).

The revised Class Notice includes, in relevant part, a description of the lawsuit, including an overview of the allegations; contact information for Class Counsel and the Settlement Administrator; a summary of the settlement amount, its distribution, and the methodology for calculating the Settlement Shares; and the release of claims.  [Docket No. 103 (Keller Decl. Nov. 22, 2021) ¶ 2, Ex. 1 (Rev. Class Notice).]  The revised Class Notice also informs Class Members of their "Legal Rights and Options," including 1) participate in the settlement by doing nothing and automatically receiving a Settlement Share; 2) opt out by mailing a completed "Election Not to Participate in Settlement" by the deadline stated in the Class Notice; 3) or object to the settlement by filing written objections with the court by the deadline stated in the Class Notice. *Id*.  Class Members are also notified about the scheduling of the final approval hearing.  *Id*.  The revised Class Notice includes a statement about the number of workweeks the individual Class Member worked and an estimated Settlement Share.  It explains that if a Class Member believes that the information about the anticipated Settlement Share is incorrect, they may "provide a written explanation of the basis for [their] challenge and submit any documents that support [their] position to the Settlement Administrator" by the deadline stated in the Class Notice.  *Id*.  *See also* Settlement Agreement § III.F.2(g).  The revised Class Notice further explains in bold type that the settlement will be paid in two distributions over approximately two years so that Class Members must ensure that their contact information remains current with the Settlement Administrator, and warns that if the Settlement Administrator does not have a Class Member's current address on file, they will not receive a payment under the second distribution.  Rev. Class Notice.  Finally, the Class Counsel submitted a copy of a certified Spanish language translation of the revised Class Notice that will be mailed to Class Members.  [Docket No. 101 (Mallison Decl. Oct. 22, 2021) ¶ 2,

Ex. 1 (Rev. Class Notice-Spanish).]

### D.      Settlement Administrator

As noted, the Settlement Administrator's fees and expenses will be paid from the Gross Settlement Amount.  Settlement Agreement § III.C.  Class Counsel proposes appointing Simpluris, Inc. ("Simpluris") as the Settlement Administrator.  2d Mallison Decl. ¶ 3.  Simpluris's fee for administering the settlement is $3,499.  *Id.*

## III.      DISCUSSION

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, "Rule 23(e) imposes on district courts an independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members."  *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)).  "The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement."  *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016).  At the preliminary approval state, the court's role is to assess whether the settlement "falls within the range of possible approval."  *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *1 (N.D. Cal. Sept. 7, 2018) (internal quotation marks and further citations omitted).

Here, the court previously certified two subclasses of hourly production workers: an "Overtime Pay Subclass" and a "Rest Period Subclass," as well as derivative subclasses based on Defendants' alleged failure to provide accurate wage statements and failure to pay all wages owed at the time of termination or resignation.  Plaintiffs now ask the court to conditionally certify a class for settlement purposes that appears to be broader, but is apparently coextensive with the certified classes.  Mot. 13.  The proposed settlement class consists of "[a]ll non-exempt production employees, including body shop technicians, technician helpers, detailers, painters, and painter helpers, who were employed by Defendants in the State of California at any time from January 23, 2015 to September 30, 2019."  Settlement Agreement § I.A.  This proposed class "includes all auto-technicians without reference to membership by certified subclass."  [Docket No. 100-1

United States District Court
Northern District of California

9

(Woolfson Decl., Oct. 19, 2021) ¶ 6.]  Plaintiffs submit a declaration by their expert statistician and database analyst, Aaron Woolfson, in which he states that "the settlement class is coextensive with the subclasses as there are no settlement class members who are not also members of the certified subclasses," and that every individual in the settlement class was subject to the policies that resulted in alleged overtime and rest period violations.  *Id*. at ¶¶ 6-9.  Therefore, the composition of the proposed settlement class appears to encompass the same employees covered by the classes certified for litigation.  Accordingly, the court now turns to whether preliminary approval is appropriate.

The court will look to two authorities in deciding whether to grant preliminary approval: the fairness factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) and the factors in Rule 23(e)(2).  "The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  The court will also consider the Northern District of California's Procedural Guidance for Class Action Settlements to the extent the guidelines are not encompassed within the *Churchill* and Rule 23(e)(2) factors.[3]

### A.  Churchill Factors

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).  The district court's role in reviewing proposed class action settlements is to determine whether a settlement is "fundamentally fair, adequate, and reasonable."  *Id.*  The court is tasked with balancing a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

---

[3] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

United States District Court
Northern District of California

stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575.

### 1.    Strength of Plaintiffs' Case and Risks of Litigation

The first three factors are addressed together and require the court to assess the plaintiff's "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).  However, the court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Officers for Justice*, 688 F.2d at 625.  These factors weigh in favor of approving settlement when the defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery."  *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).  The Ninth Circuit has explained that there is no "particular formula by which th[e] outcome [of litigation] must be tested" in conducting this inquiry; "[u]ltimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625).

Here, the SAC alleges multiple Labor Code violations, violations of the FLSA, and claims under the UCL and PAGA.  Class Counsel discusses two key factors he used to evaluate the case, its value, and the settlement.  The first factor is Defendants' financial condition.  Class Counsel explains that throughout the settlement negotiations, Defendants raised their "financial constraint" as a limit on their ability to reach a settlement.  Mallison Decl. ¶¶ 21, 34.  Class Counsel states that he made the proposed settlement conditional on discovery to confirm Defendants' financial condition, and that Defendants produced sales records from 2019 and 2020, both before and after the onset of the COVID-19 pandemic.  *Id.* at ¶ 34.  He determined that "Defendants did, in fact, establish financial constraint," and that the creation of a common fund through installment

11

1   payments outweighed the risks associated with proceeding to trial.  *Id.*

2       Class Counsel next explains that the overtime calculations rested on Plaintiffs' assertion of

3   hours worked for Defendants, but that Plaintiffs lack any supporting records or documentation.

4   According to Class Counsel, the settlement is in the Class Members' best interests given the risks,

5   including the risks of delay and the possibility of Defendants' prevailing on the merits, as well as

6   the practical risk of Defendants' bankruptcy.  *Id.*

7       Given the risks and costs of continued litigation, including the risk of Defendants'

8   declaring bankruptcy during the litigation, the court finds that the immediate reward to Class

9   Members through settlement is preferable.  As discussed, Class Members will receive a pro-rata

10  share of the Net Settlement Amount based on the number of weeks each individual Class Member

11  worked compared to the number of weeks worked by all Class Members.  There is value in the

12  Class Members receiving money now, as opposed to some uncertain time in the future.

13      Weighing the potential benefits to the class against the risks of continued litigation, the

14  court finds that first three *Churchill* factors support approving the settlement.

15                      **2.      Amount Offered in Settlement**

16      The fourth *Churchill* factor looks at the amount of recovery offered in settlement.  When

17  considering whether the amount offered in settlement is fair and adequate, "[i]t is the complete

18  package taken as a whole, rather than the individual component parts, that must be examined for

19  overall fairness."  *Officers for Justice*, 688 F.2d at 628.  In addition, "it is well-settled law that a

20  proposed settlement may be acceptable even though it amounts to only a fraction of the potential

21  recovery that might be available to the class members at trial."  *Nat'l Rural Telecommunications*

22  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

23      As discussed above, the Net Settlement Amount is approximately $605,334 after

24  deductions for attorneys' fees and litigation costs, incentive awards, administration fees, and

25  payment to the LWDA.  Class Counsel states that there are 84 individuals who worked for

26  Defendants between January 23, 2015 and September 30, 2019.  Mallison Decl. ¶ 22, Settlement

27  Agreement Ex. A (Class List).  Therefore, the average net recovery per Participating Class

28  Member is $7,147.  Mot. 5.  Plaintiffs estimate the damages for their unpaid overtime claims to be

United States District Court
Northern District of California

1    $1,282,301, and the damages for their meal and rest break claims (based on the theory that

2    Defendants failed to provide lawful meal and rest breaks by requiring Class Members to combine

3    their breaks) to be $1,443,982.  *Id.* at ¶ 35.  The sum of these damages, not including waiting time

4    penalties, penalties for inaccurate wage statements, or interest, is $2,726,283.  Therefore, the $1.1

5    million settlement represents approximately 40% of the total exposure for these claims.  *Id.*

6           Plaintiffs further explain that prevailing on their overtime and meal and rest break claims

7    would provide the basis for recovery of PAGA penalties, but that any such penalties would

8    potentially be reduced as "unjust, arbitrary and oppressive, or confiscatory" given Defendants'

9    financial condition.  *See* Cal. Lab. Code § 2699(e)(2).

10          The court finds that the monetary relief offered by the Settlement Agreement is fair and

11   reasonable.

12                        **3.        Stage of Proceedings**

13          Class settlements are presumed fair when they are reached "following sufficient discovery

14   and genuine arms-length negotiation."  *DIRECTV, Inc.,* 221 F.R.D. at 528; 4 Newberg at § 11.24.

15   "The extent of discovery [also] may be relevant in determining the adequacy of the parties'

16   knowledge of the case."  *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation,*

17   *Third* § 30.42 (1995)).  "A court is more likely to approve a settlement if most of the discovery is

18   completed because it suggests that the parties arrived at a compromise based on a full

19   understanding of the legal and factual issues surrounding the case."  *Id.* (quoting 5 *Moore's*

20   *Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).  However, "[i]n the context of class

21   action settlements, as long as the parties have sufficient information to make an informed decision

22   about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'"  *Wilson v.*

23   *Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting

24   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

25          Here, Class Counsel states that Plaintiffs conducted "significant amounts of written

26   discovery" after filing the lawsuit.  Mallison Decl. ¶ 16.  This includes receiving payroll and

27   timekeeping records for Class Members during the Class Period.  Plaintiffs also deposed

28   Defendants' PMK, the individual responsible for calculating the production workers' hours to

United States District Court
Northern District of California

calculate payroll.  *Id.*; *see Sandoval Ortega*, 2020 WL 4584227, at *2.

Defendants also produced discovery in connection with the parties' settlement negotiations that confirmed their "financial constraint and hardship."  Mallison Decl. ¶ 21.  The court finds that the extent of discovery taken in this case favors approval of the settlement.

### 4.   Experience and Views of Counsel

The experience and views of counsel weigh in favor of approving the settlement.  Mallison & Martinez is a class action law firm that was created in 2005.  Mallison Decl. ¶ 4.  Attorney Stan Mallison states that he has practiced class and representative action litigation for approximately 18 years.  Attorney Hector Martinez has practiced law, including prosecuting representative PAGA actions, since 1998.  *Id.* at ¶¶ 8, 9, 42.  In connection with class certification, the court previously found that Mallison & Martinez satisfies Rule 23(a)'s adequacy of representation requirements and that Class Counsel has "vigorously prosecuted this action during its pendency."  *Sandoval Ortega*, 2020 WL 4584227, at *5.  Mallison states in his declaration in support of the motion that he "believe[s] the Settlement is fair, adequate, and reasonable, as it provides substantial compensation to employees who worked for Defendants," and that "the settlement distribution is fair and reasonable given the circumstances of this case and the strength and weaknesses of the various claims."  Mallison Decl. ¶¶ 22, 28.

The court finds that this factor weighs in favor of finding that the proposed settlement is fair, adequate, and reasonable.

### 5.   Government Participant

This factor is inapplicable because there is no government participant in this case.  *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

### 6.   Reaction of Class Members

The reaction of the Class Members is best assessed at the final approval hearing since the court can look at how many class members submitted claim forms and objections.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval of a class action settlement where there were 54 objections out of 376,301 notices sent).  Therefore, this factor

United States District Court
Northern District of California

should not be considered in preliminary approval.

**B.     Rule 23(e) Factors**

Rule 23(e) requires the court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

**1.  Adequacy of Representation**

Class Counsel's experience is noted in Section III.A.4, above.  Class Counsel states that Plaintiffs "have carried out all required tasks in this case to help us pursue this action, providing us with information, documents, insights, opinions, and necessary decisions to make this case successful."  Mallison Decl. ¶ 13.  He also states that he is unaware of any conflict or suggestion of conflict between Plaintiffs and the absent Class Members.  *Id.*

There is no indication that Plaintiffs' interest is not aligned with the interests of the absent Class Members.  Further, as noted, Class Counsel are experienced and competent, which is another indication that Plaintiffs have adequately represented the class.  *See In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  The court finds that this factor is satisfied.

## 2.      Non-Collusive Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez*, 563 F.3d at 965.  Courts must "scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect negotiations.'" *Briseño*, 998 F.3d at 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  These "*Bluetooth* factors" are (1) "when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) when the payment of attorneys' fees is "separate and apart from class funds"; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund.  *Id.*  The Ninth Circuit recently clarified that "district courts must apply the *Bluetooth* factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged" in both pre- *and* post-class certification proposed settlements.  *Briseño*, 998 F.3d at 1025-26.

The first factor is not present here.  Class Members are eligible for Settlement Shares of the Net Settlement Fund in the form of monetary payments.  As to attorneys' fees, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when awarding fees. *Bluetooth*, 654 F.3d at 942.  The Ninth Circuit has identified 25% of the common fund as a reasonable benchmark for an attorneys' fees award.  *Id.*  Courts may also cross-check the amount by using both methods.  *See Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL 342059, at *14 (N.D. Cal. Jan. 23, 2017).  In this case, Class Counsel will request, and Defendants will not oppose, up to one-third of the Gross Settlement Amount, or $366,667.  This amount is higher than the benchmark of 25% of the common fund.  In supplemental briefing, Class Counsel explains that the current lodestar is $512,317.70.  [Docket No. 98-1 (3d Mallison Decl., Oct. 12, 2021) ¶ 3, Ex. 1.]  Therefore, the requested fee award of $366,667 amounts to a fractional multiplier of .72.  *Id.*  The court will address the exact amount of fees to be awarded in the order for final approval, but at this stage, it does not appear that counsel will receive a

disproportionate share of the settlement.

The second *Bluetooth* factor refers to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from the class fund without objection by the defendant. Such provisions "carr[y] the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Bluetooth*, 654 F.3d at 947 (internal quotation marks omitted); *see Briseño*, 998 F.3d at 1026-27 ("[a] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members."). There is a clear sailing provision in this case, as the settlement agreement states that Defendants will not oppose Class Counsel seeking fees up to one-third of the Gross Settlement Amount. Settlement Agreement III.C.2. "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948. This one warning sign is not necessarily enough to prove collusion, depending on the other indicia of arms-length negotiations present in the case. *See, e.g. Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *10 (N.D. Cal. July 8, 2019) (stating that other relevant considerations include the benefits to the class members and the extent of discovery and litigation). As examined further herein, the parties' litigation efforts are not indicative of collusion and the amount of attorneys' fees do not appear disproportionate to the class recovery. Therefore, the second factor does not prohibit granting preliminary approval.

As for the third factor, there is no concern under this factor, as any unpaid funds will not revert to Defendants; rather, such funds will go through a second distribution to Class Members, and any unpaid funds remaining after the second distribution will be distributed to *cy pres* recipients.

In sum, the Settlement Agreement "appears to be the product of serious, informed, non-collusive negotiations." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1078, 1079-80 (N.D. Cal. 2007).

### 3. Adequate Relief

In considering whether class relief is adequate, a court must consider:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3) . . .

Rule 23(e)(2)(C).

### a. Costs, Risks, and Delay of Trial and Appeal

The cost and risk of continued litigation is discussed in Section III.A.1, above.

### b. Relief Distribution

Rule 23 requires the court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Settlement Agreement's notice provisions are set forth in detail above in Section II.C. In relevant part, the Settlement Agreement provides that Defendants will provide the name, contact information, Social Security number, and number of workweeks worked during the applicable period for each Class Member to the Settlement Administrator within 14 calendar days of preliminary approval. The Settlement Administrator will mail the Class Notice to Class Members within ten days after receiving this information, and will also send the Class Notice to Class Members for whom it is provided email addresses. Prior to mailing, the Settlement Administrator will update the mailing address information using a national database. Notices returned with a forwarding address will be re-mailed to the new address via United States Mail,

United States District Court
Northern District of California

1    and if a notice is returned without a forwarding address, the Settlement Administrator will perform

2    a skip trace search to obtain an updated address.

3        The Class Members need not submit a claim form in order to receive a Settlement Share.

4    The revised Class Notice includes pertinent information about the lawsuit and explains that Class

5    members may do any of the following: 1) participate in the settlement by doing nothing and

6    automatically receiving a Settlement Share; 2) opt out by mailing a completed "Election Not to

7    Participate in Settlement" by the deadline stated in the Class Notice; 3) or object to the settlement

8    by filing written objections with the court by the deadline stated in the Class Notice.  It also

9    explains how the Class Members may challenge the number of workweeks printed on the Class

10   Notice.

11       The court finds that the proposed notice is adequate and reasonably calculated to apprise

12   Class Members of their rights under the Agreement.

13                            **c.      Attorneys' Fees**

14        Attorneys' fees are discussed in Section III.B.2, above.

15                            **d.      Equitable Treatment**

16       The proposed settlement provides equal access to the Net Settlement Fund for all Class

17   Members who do not submit timely "Elections Not to Participate."  According to Plaintiffs'

18   statistician and database analyst, the proposed workweek model of distribution is "the most

19   reasonably manageable model" to achieve "the equitable distribution of settlement funds."

20   Woolfson Decl. ¶ 10.  The proposed distribution model balances conflicting factors such as

21   interest and "asserted higher violation rates for the earliest periods," which favor older claims,

22   with increasing wage rates and shorter limitations periods for penalties, which favor newer claims.

23   *Id*.  The court finds that the proposed settlement treats Class Members equitably.

24       **C.      Northern District Guidelines**

25       The Northern District of California has issued procedural guidance for the settlement of

26   class actions ("Guidelines").  To the extent the guidelines are not encompassed within the

27   *Churchill* and Rule 23(e)(2) factors discussed above, the court will consider them, although they

28   do not carry the weight of law.

### 1. Release of Claims

The Guidelines require the court to look at "any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case." Guideline § 1(d).

The release provision in the Settlement Agreement that is applicable to the Class Members provides:

> **Participating Class Members.** In consideration of their Settlement Share and other terms and conditions of this Agreement, each Class Member who does not submit a timely and valid Election Not to Participate in Settlement, shall, upon the Effective Date, be deemed to have released Defendants, their and its current and former agents co-employers, and its related entities, spouses, owners, board members, alter egos, predecessors, successors and assigns from *all claims alleged in the operative complaint in the Action, and any additional wage-and-hour claims that could have been brought based on the facts alleged therein*, through the date of Preliminary Approval ("Released Matters").

Settlement Agreement § III.G.3 (emphasis added).

The released claims differ from the claims asserted in the operative complaint in that the release applies to claims "wage-and-hour claims that could have been brought based on the facts alleged" in the operative complaint. "The Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Courts in this district have approved releases with similar language. *Id.* (collecting cases). The court finds that the release is not improperly broad. *See*, e.g., *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 166 (N.D. Cal. 2019) (granting preliminary approval to wage and hour class action settlement that released all claims "that are asserted in the FAC or could have been asserted based on the same nucleus of operative facts.").

### 2. Settlement Administration

"In the motion for preliminary approval, the parties should identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead

class counsel's firms' history of engagements with the settlement administrator over the last two years.  The parties should also address the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs."  Guideline § 2.

       **3.**      **Class Counsel proposes appointing Simpluris as the Settlement Administrator.  Simpluris's fee for administering the settlement is $3,499.  2d Mallison Decl. ¶ 3.  Class Counsel states that they selected Simplus after soliciting bids from "six reputable administration companies."  3d Mallison Decl. ¶ 2.  Simpluris submitted the lowest bid. Class Counsel has worked with Simpluris "numerous times before" and knows it "to be competent to diligently administer this settlement."  *Id*. The court finds the appointment of Simpluris is appropriate in this case.  Incentive Awards**

The Guidelines require the parties to "include information about the incentive awards they intend to request as well as the evidence supporting the awards in the motion for preliminary approval.  The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives."  Guideline § 7.

Here, after the Class Members are notified and have the opportunity to object, Plaintiffs intend to request incentive awards that do not exceed $7,500 for each of the Class Representatives. This amount is higher than the presumptively reasonable incentive award in this district, which is $5,000.  *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019).  In supplemental briefing, Class Counsel states the following:

> Plaintiffs have contributed to the prosecution and settlement of this case in earnest.  Among other efforts, they gave class counsel a wealth of information about Defendant's operations as they related to the class claims herein, produced documents, responded to discovery, sat for deposition, and generally remained in-touch and enthusiastic about participating in this litigation.  More than anything, they risked and continue to risk the stigma of having their names attached to this federal class action lawsuit, and the associated harm to their reputations and the risk of retaliation for future employers.  In spite of, and with knowledge of these risks, they stepped forward to vindicate their labor rights.

3d Mallison Decl. ¶ 4.  Class Counsel will submit declarations by the Class Representatives at the time of final approval.  *Id*.

United States District Court
Northern District of California

Although the requested incentive award exceeds the presumptively reasonable amount, the court finds that this factor does not weigh against preliminary approval. The court will make a final determination on the incentive award at a later date.

### 4.     Cy Pres Awardees

"If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members. The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. In general, unused funds allocated to attorneys' fees, incentive awards, settlement administration fees and payments to class members should be distributed to the class pro rata or awarded to cy pres recipients."

Here, Plaintiffs state that they will propose California Rural Legal Assistance ("CRLA") and Legal Aid at Work ("LAAW") as cy pres recipients at final approval. Mallison Decl. ¶ 27. At the preliminary approval hearing, the court asked Class Counsel to provide additional information supporting the selection of CRLA as a cy pres recipient in this case. Class Counsel explains in a supplemental declaration that there is "substantial overlap" between the work of Mallison & Martinez, CRLA, and LAAW "assisting working class, Spanish speaking communities," as the Mallison & Martinez firm "primarily represents low-wage, often monolingual Spanish speaking clients who seek [their] assistance with employment claims such as wage/hour, discrimination, harassment, workers' compensation, and wrongful termination." *Id*. at ¶ 7. This is work similar to the work done by CRLA and LAAW. *Id*., Exs. 3, 4.

Additionally, Class Counsel acknowledges that attorney Hector Martinez worked for CRLA from 1999-2004, as did Liliana Garcia, a former attorney with Mallison & Martinez. 4th Mallison Decl. ¶ 6. Counsel explains that his office is currently co-counsel with CRLA on at least one case, but that "[t]here are no agreements between anyone at [his] office or at CRLA that the organization will be selected as a cy pres recipient in connection with unclaimed settlement funds." *Id*. at ¶ 6.

The "overlap" in the work of Class Counsel, CRLA and LAAW is not surprising, given the relative dearth of legal resources for Spanish speaking low wage workers. The court is familiar

United States District Court
Northern District of California

1   with the work of CRLA and LAAW, which is directly in line with the claims and goals pursued in

2   this case.  Therefore, CRLA and LAAW are appropriate cy pres recipients.

3           **5.**        **Class Action Fairness Act ("CAFA") Notice**

4           "The parties should address whether CAFA notice is required and, if so, when it will be

5   given."  Guidelines § 10.

6           In supplemental briefing, Plaintiffs confirm that Defendants sent CAFA notice on October

7   11, 2021.  4th Mallison Decl. ¶ 8.

8                                           \* \* \*

9           In sum, the court concludes that preliminary approval is warranted.

10  **IV.**    **CONCLUSION**

11          For the foregoing reasons, the motion for preliminary approval is granted.  It is ordered

12  that:

13  1.  The Settlement Agreement is preliminarily approved as fair, adequate, and reasonable pursuant

14      to Rule 23(e).

15  2.  Simpluris, Inc. is appointed as the Administrator.

16  3.  The revised proposed Class Notice (Docket No. 103-1) is approved as to form and content.

17      The parties shall have discretion to jointly make non-material minor revisions to the claim

18      forms or the class notices.  Responsibility regarding settlement administration, including, but

19      not limited to, notice and related procedures, shall be performed by the Administrator, subject

20      to the oversight of the parties and this court as described in the Settlement Agreement.  The

21      costs of providing notice to the Class Members and for administering the settlement shall be

22      paid out of the Settlement Fund, as provided in the Settlement Agreement.

23  4.  The procedures for Class Members to exclude themselves from or object to the settlement are

24      approved.  Any request for exclusion by a Class Member must be postmarked by February 2,

25      2022.  Any objection by a Class Member must be mailed to the court and postmarked by

26      February 2, 2022 and in compliance with the terms of the Settlement Agreement.

27  5.  The parties shall file any memoranda or other materials in support of final approval of the

28      Settlement Agreement by February 17, 2022 and shall file responses to any timely and valid

objection to the Settlement Agreement by the same date.  Such materials shall be served on Class Counsel, defense counsel, and on any member of the Class (or their counsel, if represented by counsel) to whose objection to the Settlement Agreement the memoranda or other materials respond.

6. Plaintiffs' claims against Defendants are hereby stayed.

7. Pending final determination of whether the settlement should be approved, Plaintiffs and each Class Member, and any person purportedly acting on behalf of any Class Member(s), are hereby enjoined from commencing, pursuing, maintaining, enforcing, or proceeding, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties, provided that this injunction shall not apply to the claims of Class Members who have timely and validly requested to be excluded from the Class.  This injunction will remain in force until the Effective Date or until such time as the parties notify the court that the Settlement Agreement has been terminated.

8. In the event that the proposed settlement is not finally approved by the court, or in the event that the settlement becomes null and void or terminates pursuant to the terms of the Settlement Agreement, this order and all orders entered in connection herewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this litigation or in any other case or controversy, in such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

9. Counsel for the parties are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement Agreement which are not materially inconsistent with either this order or the terms of the Settlement Agreement.

The following deadlines shall apply:

| Deadline for Defendants to provide to the | December 14, 2021 |

| | |
|---|---|
| Settlement Administrator the Class List, including mailing address, telephone number, Social Security Number, and number of workweeks per Class Member | |
| Deadline for Settlement Administrator to mail Class Notice | December 24, 2021 |
| Deadline for Class Members to submit objections/requests for exclusion | February 2, 2022 |
| Deadline for Class Counsel to file motion for final approval | February 17, 2022 |
| Final Approval Hearing | **March 24, 2022 at 1:00 p.m.** |

**IT IS SO ORDERED.**

Dated: November 30, 2021



_____

Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California