STAN S. MALLISON (Bar No. 184191)
Stanm@TheMMLawFirm.com
HECTOR R. MARTINEZ (Bar No. 206336)
Hectorm@TheMMLawFirm.com
DANIEL C. KELLER (Bar No. 332576)
Dkeller@TheMMLawFirm.com
MALLISON & MARTINEZ
1939 Harrison Street, Suite 730
Oakland, California 94612-3547
Telephone: (510) 832-9999
Facsimile: (510) 832-1101

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SALVADOR SANDOVAL ORTEGA, J. GUADALUPE ALANIZ, EFRAIN HENRIQUEZ, NORBERTO RODRIGUEZ, JOSE LUIS CORREA MARTINEZ, MELVIN EFRAIN GOODY RAMIREZ, EDUARDO RODRIGUEZ, RODOLFO VAZQUEZ, DANIEL VALENCIA, and JOSE VALENCIA, on behalf of themselves and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>AHO ENTERPRISES, INC. (dba "SUPERIOR BODY SHOP"); JACK AHO, ISSA AHO, HANI AHO and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No.: 4:19-CV-00404-DMR<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:     March 24, 2022<br>Time:     1:00 p.m.<br>Judge:    Hon. Donna M. Ryu<br>Room:     Courtroom 4 – 3rd Floor<br><br>Complaint Filed: January 23, 2019 |

**TO THE HONORABLE COURT AND ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT ON March 24, 2022, AT THE ABOVE-CAPTIONED COURT AT 1:00 PM, PLAINTIFFS JOSE SALVADOR SANDOVAL ORTEGA, J. GUADALUPE ALANIZ, EFRAIN HENRIQUEZ, NORBERTO RODRIGUEZ, JOSE LUIS CORREA MARTINEZ, MELVIN EFRAIN GOODY RAMIREZ, EDUARDO RODRIGUEZ, RODOLFO VAZQUEZ, DANIEL VALENCIA, and JOSE VALENCIA ("Plaintiffs") will move for Final Approval of Class Settlement, Award of Class Representative Incentive Payments, Award of Class Counsel Fees and Costs, Award of Administration Fees, and Approval of PAGA Payment.

By this Motion, Plaintiffs move the Court for an Order:

1.      Granting Final Approval of the Class Settlement;

2.      Awarding Class Representative Incentive Payments of $7,500 each to Plaintiffs Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Goody Ramirez, Eduardo Rodriguez, Rodolfo Vazquez, Daniel Valencia, and Jose Valencia;

3.      Awarding Class Counsel $366,666.67 in attorneys' fees and $12,000 for reimbursement of litigation costs;

4.      Awarding Settlement Administrator, Simpluris, Inc., $3,499 as reasonable compensation for its work;

5.      Approving $50,000 as the amount resolving the claim under the Private Attorneys General Act (PAGA), $37,500 of which shall be paid to the California Labor Workforce Development Agency (75% of the PAGA amount); and

6.      Approving the distribution of the Net Settlement Amount to Participating Class Members.

Plaintiffs bring this Motion on the grounds that, after arms-length negotiations, the Parties have reached a fair, reasonable and adequate settlement that is within the range of final approval and that the fees and costs noted above are reasonable given the circumstances of this

case. The Court granted Preliminary Approval of this settlement on November 30, 2021.

This Motion is based on this Notice and Motion, the supporting Memorandum of Points and Authorities, the Class Counsel declaration of Stan Mallison, including attached exhibits, the declarations of the Class Representatives, the declaration from the Settlement Administrator, the record on file herein, the evidence and oral argument that may be presented at the hearing, and such other matters of which the Court may take judicial notice.


Dated: February 17, 2022                    **MALLISON & MARTINEZ**


By:     Stan Mallison
        Hector R. Martinez
        Daniel C. Keller

        Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................ 3

    A.  SUMMARY OF THE LITIGATION ......................................................................... 3
    B.  SETTLEMENT NEGOTIATIONS ............................................................................ 3

III.  SUMMARY OF SETTLEMENT TERMS ................................................................. 4

    A.  THE MAXIMUM SETTLEMENT CONSIDERATION ............................................... 4
    B.  THE COURT ORDERED CLASS NOTICE WAS COMPLETED. ............................... 6
    C.  TAX CONSEQUENCES OF SETTLEMENT PAYMENTS ......................................... 6
    D.  PAYMENT OF SETTLEMENT SHARES ................................................................. 6
    E.  PAGA PENALTY PAYMENT TO THE STATE ....................................................... 7
    F.  DISTRIBUTION OF UN-CASHED CHECKS ........................................................... 7
    G.  SCOPE OF RELEASE ........................................................................................... 7
    H.  SETTLEMENT ADMINISTRATION ....................................................................... 7
        1.  Payment to Plaintiffs, Class Counsel Attorneys' Fees Payment, and Class Counsel's Costs Payment ..... 8

IV.  THE MOTION FOR FINAL APPROVAL SHOULD BE GRANTED.................... 8

    A.  THE STRENGTH OF PLAINTIFFS' CASE .............................................................. 11
    B.  THE RISK, EXPENSE, COMPLEXITY, AND LIKELY DURATION OF FURTHER LITIGATION ..... 11
    C.  THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT TRIAL ...... 12
    D.  THE AMOUNT OFFERED IN SETTLEMENT .......................................................... 12
    E.  THE EXTENT OF DISCOVERY COMPLETED, AND THE STAGE OF THE PROCEEDINGS........ 12
    F.  THE EXPERIENCE AND VIEWS OF COUNSEL ..................................................... 13
    G.  THE PRESENCE OF A GOVERNMENTAL PARTICIPANT ...................................... 13
    H.  THE REACTION OF THE CLASS MEMBERS TO THE PROPOSED SETTLEMENT ...... 14

V.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS. ...................... 14

    A.  THE NUMEROSITY REQUIREMENT IS MET. ....................................................... 14
    B.  THE COMMONALITY AND TYPICALITY REQUIREMENTS ARE MET. .................. 15
    C.  THE NAMED PLAINTIFFS AND CLASS COUNSEL ARE ADEQUATE CLASS REPRESENTATIVES ..... 15
    D.  CERTIFICATION UNDER RULE 23(B)(3) IS APPROPRIATE FOR SETTLEMENT PURPOSES. ..... 15

VI.  CLASS COUNSELS' REQUESTED FEE AND COSTS ARE REASONABLE ..... 17

    A.  THE REQUESTED FEE IS WITHIN THE RANGE OF FEES AWARDED IN THIS CIRCUIT ..... 17
    B.  THE CIRCUMSTANCES OF THIS CASE SUPPORT A 33 1/3% FEE AWARD ......... 18
        1.  The Results Obtained ................................................................................ 19
        2.  The Risks Involved .................................................................................... 19
        3.  The Skill Required .................................................................................... 20
        4.  The Quality of the Work ........................................................................... 20
        5.  The Contingent Nature of the Fee and the Financial Burden.................. 20
        6.  Awards made in similar cases. ................................................................. 20
    C.  CLASS COUNSEL'S REQUEST FOR COSTS IS ALSO REASONABLE ..................... 21

VII.  CLASS REPRESENTATIVE'S ENHANCEMENT IS ALSO REASONABLE ..... 21

VIII.  THE FEES OF SIMPLURIS, INC. SHOULD BE APPROVED........................... 23

IX.  CONCLUSION .............................................................................................................. 23

Memorandum ISO Final Approval          Case No.: 4:19-CV-00404-DMR

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591 (1997) ------------------------------------------------------------------- 16, 17

*Arias v. Superior Court,*
(2009) 46 Cal.4th 969------------------------------------------------------------------------------ 13

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ------------------------------------------------------------------------------ 18

*Chiaramonte v. Pitney Bowes, Inc.,*
2008 WL 510765 (S.D. Cal. 2008) -------------------------------------------------------------- 12

*Church v. Consolidated Freightways, Inc.,*
1993 WL 149840 (N.D. Cal. May 3, 1993)------------------------------------------------------- 9

*Churchhill Village v. General Electric,*
361 F.3d 566 (9th Cir. 2004) ---------------------------------------------------------------------- 10

*City of Detroit v. Grinnell Corp.,*
356 F.Supp. 1380 (S.D.N.Y. 1972) --------------------------------------------------------------- 8

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996) -------------------------------------------------------------------- 12

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ------------------------------------------------------------------ 8, 9

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) -------------------------------------------------------------------- 13

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
213 F.3d 454 (9th Cir. 2000) ---------------------------------------------------------------------- 11

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ------------------------------------------------------------------------------ 17

*Gen. Tel. Co. v. EEOC,*
446 U.S. 318 (1980) ------------------------------------------------------------------------------ 14

*Gen. Tel. Co. v. Falcon,*
457 U.S. 147 (1982) ------------------------------------------------------------------------------ 15

*Glass v. UBS Financial Services, Inc.,*
2007 WL 221862 (N.D. Cal. Jan. 26, 2007)---------------------------------------------------- 22

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ------------------------------------------------------------- passim

*Hanrahan v. Britt,*
174 F.R.D. 356 (E.D. Pa. 1997) ----------------------------------------------------------------- 13

*In re Activision Sec. Litig.,*
723 F. Supp. 1373 (N.D. Cal. 1989) ------------------------------------------------------------ 18

*In re Armored Car Anti-Trust Lit.,*
472 F.Supp. 1357 (N.D. Ga. 1979) -------------------------------------------------------------- 9

*In re Corrugated Container Anti-Trust Lit. II,*
659 F.2d 1322 (5th Cir. 1981) -------------------------------------------------------------------- 8

*In re GNC Shareholder Litig.,*
668 F. Supp. 450 (W.D. Pa. 1987)-------------------------------------------------------------- 21

*In re N. Dist. of Cal., Dalkon Shield, Etc.,*
693 F.2d 847 (9th Cir. 1982) ---------------------------------------------------------------------- 16

*In re Omnivision Technologies, Inc.,*
2008 WL 123936 (N.D. Cal, January 9, 2008)------------------------------------------------- 10

*In re Painewebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ---------------------------------------------------------------- 13

*In re Playmobil Antitrust Litig.,*
35 F.Supp.2d 231 (E.D.N.Y. 1998) -------------------------------------------------------------- 14

*In re Sumitomo Copper Litig.,*
74 F. Supp. 2d 393 (S.D.N.Y. 1999)------------------------------------------------------------- 19

Memorandum ISO Final Approval                              Case No.: 4:19-CV-00404-DMR

*In re United Energy Corp. Sec. Litig.*,
 1989 WL 7321 (C.D. Cal. 1989) ------------------------------------------------------------21

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ---------------------------------------------------------------16

*In re Warner Communications Sec Litig.*,
 618 F Supp 735 (S.D.N.Y. 1985) ---------------------------------------------------------13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 720 F. Supp. 1379 (D. Ariz. 1989) --------------------------------------------------------9

*Ingram v. The Coca-Cola Company*,
 200 F.R.D. 685 (N.D. Ga. 2001) ---------------------------------------------------------22

*Knight v. Red Door Salons, Inc.*,
 2009 WL 248367 (N.D. Cal. 2009)-------------------------------------------------------18

*Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*,
 544 U.S. 1044 (2005) -----------------------------------------------------------------------10

*Linney v. Cellular Alaska P'ship*,
 151 F.3d 1234 (9th Cir. 1998) --------------------------------------------------------9, 12

*Lucas v. Kmart Corp.*,
 234 F.R.D. 688 (D. Colo. 2006)-----------------------------------------------------------10

*Magadia v. Wal-Mart Associates, Inc.*,
 384 F.Supp.3d 1058 (N.D. Cal. 2019)-----------------------------------------------------7

*Officers for Justice v. Civil Srv. Comm'*,
 688 F.2d 615 (9th Cir. 1982) ------------------------------------------------ 8, 9, 10, 11

*Oppenlander v. Standard Oil Co. (Ind.)*,
 64 F.R.D. 597 (D. Colo. 1974) -----------------------------------------------------------11

*Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ---------------------------------------------------------------13

*Powers v. Eichen*,
 229 F.3d 1249 (9th Cir. 2000) ------------------------------------------------------------18

*Ratner v. Bennett*,
 1996 WL 243645 (E.D. Pa. May 8, 1996) ----------------------------------------------13

*Rosario v. Livaditis*,
 963 F.2d 1013 (7th Cir. 1992) ------------------------------------------------------------15

*Sandoval, et al. v. Autowest Collision Repairs, Inc., et al.* ----------------------------20

*Santos v. Camacho*,
 2008 WL 1699448 (D. Guam, April 10, 2008)---------------------------------------------11

*Six Mexican Workers v. Arizona Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) ------------------------------------------------------------18

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ------------------------------------------------------- 17, 18

*Van Bronkhorst v. Safeco Corp.*,
 529 F.2d 943 (9th Cir. 1976) --------------------------------------------------------------8

*Van Vranken v. Atlantic Richfield Co.*,
 901 F. Supp. 294 (N.D. Cal. 1995) ------------------------------------------------------22

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir.2002)-------------------------------------------------------------18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ---------------------------------------------------------------10

*Whiteway v. Fed Ex Kinkos Office & Print Services, Inc.*,
 2007 WL 4531783 (N.D. Cal. Dec. 17, 2007)-------------------------------------------22

## STATUTES

Cal. Lab. Code § 2699 ---------------------------------------------------------------7, 13

Civil Code § 1542------------------------------------------------------------------------7

Fed. Rules Civ. Proc. § 23 -----------------------------------------------------------passim

## TREATISES

5 *Moore's Federal Practice* § 23.85 ------------------------------------------------------------- 11, 14
Federal Practice & Procedure § 1797.5 (3d ed. 1998) --------------------------------------------- 10
Manual for Complex Litigation, Fourth, § 21.61 ------------------------------------------------9, 10
*Manual for Complex Litigation*, Second, § 30.41 (1985) ----------------------------------------- 13
Manual for Complex Litigation, Third § 30.42 ---------------------------------------------------- 10
*Manual for Complex Litigation*, Third, § 30.44 (1995)------------------------------------------- 14
Newberg on Class Actions 4th Ed. § 11.41 ------------------------------------------------- 8, 10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs Jose Salvador Sandoval Ortega, J. Guadalupe Alaniz, Efrain Henriquez, Norberto Rodriguez, Jose Luis Correa Martinez, Melvin Efrain Godoy Ramirez, Eduardo Rodriguez, Rodolfo Vazquez, Daniel Valencia, and Jose Valencia ("Plaintiffs") seek preliminary approval of this $1.1 million class action settlement on behalf of a class of non-exempt production workers employed by defendants Aho Enterprises, Inc. (dba "Superior Body Shop"), Jack Aho, Issa Aho, and Hani Aho ("Defendants") at their "Superior Body Shop" automotive repair center at any time from January 23, 2015 to September 30, 2019 ("Class Members"). Plaintiffs allege Defendants required Class Members to clock out before working overtime, and to separately record those hours for which Class Members were only paid straight-time wages. Plaintiffs also allege Defendants denied them meal and rest breaks by requiring they be combined rather than spaced out throughout the workday. Following lengthy negotiations including two mediation sessions and a settlement conference, Plaintiffs have agreed to settle this certified wage-and-hour class action in accordance with the terms of the Settlement Agreement and Release ("Settlement") attached as Exhibit 1 to the accompanying declaration of Stan Mallison ("Mallison Decl."). Given the relatively small class size here (71 individuals[1]), this *non-reversionary* seven-figure Settlement provides substantial recovery to Class Members for their claims. In addition, the risks and delays of further litigation make the Settlement all the more valuable. Because this excellent instant Settlement is—*at minimum*—fair, adequate, and reasonable, it should be approved.

The Gross Settlement Amount is $1,100,000 and covers the following: all Settlement Shares to be paid to Class Members who do not submit a valid and timely Election Not to Participate in Settlement ("Participating Class Members"); reasonable fees of the Settlement

---

[1] At preliminary approval, there were an estimated 84 Class Members. However, the list provided to the Settlement Administrator contained only 71 Class Members. Exhibit 2, Declaration of Lindsay Kline Regarding Notice and Settlement Administration ("Kline Decl.") ¶¶ 6-8. Thus, Plaintiffs appear to have overstated the number of Class Members at preliminary approval.

the Class Representatives; a payment for release of Private Attorneys General Act ("PAGA") claims of up to $50,000 (of which 75%, i.e., $37,500, shall be remitted to the Labor and Workforce Development Agency ("LWDA")); the required payroll taxes, estimated to be $11,840.20, and Class Counsel's attorneys' fees of up to one-third of the Gross Settlement Amount (i.e., $366,666), plus reasonable costs (not to exceed $12,000). After deduction of the foregoing sums from the Gross Settlement Amount, the entire Net Settlement Amount will be distributed to Participating Class Members, and no Settlement funds shall revert to Defendants. Any residual funds resulting from undeliverable or uncashed settlement checks to Class Members will be disbursed to a suitable cy pres beneficiary, California Rural Legal Assistance ("CRLA") and/or Legal Aid at Work ("LAAW"). *See* Mallison Decl. ¶ 29.

The Settlement represents informed, closely negotiated compromises on both sides. Mallison Decl. ¶¶ 34-38. The Settlement was reached after an extensive production by Defendants of the relevant data necessary to evaluate this settlement. Mallison Decl. ¶ 18. After having litigated and obtained a ruling on class certification, the parties approached negotiations with a clear view of the facts of the case. Plaintiff's counsel balanced the terms of the Settlement, including both the Settlement amount and the benefits conferred to Class Members by the Settlement, against the probable outcome of a wide range of issues at trial. Mallison Decl. ¶¶ 34-38. Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendants, the difficulties of complex litigation, the lengthy process of establishing specific damages, new legal decisions affecting pivotal issues in the case, and other various possible risks and delays. *Id*. Indeed, no matter how good the facts and law, every trial retains inherent risk. *Id*. The Settlement, however, provides a certainty of recovery for Class Members. Additionally, further litigation or trial of the matter would substantially delay any compensation to Class Members and/or potentially imperil the financial stability of Defendants, and their ability to provide any remedies in this action. *Id*.

As discussed below, the Settlement satisfies the criteria for preliminary settlement approval under California law and falls well within the range of proper approval. Accordingly, Plaintiffs present this memorandum in support of the Motion for Preliminary Approval of the

Settlement, conditionally certifying the settlement class, approving and directing distribution of the Class Notice and related materials to the Class, appointing the Class Representatives, Class Counsel, and Settlement Administrator, and setting a final approval schedule.

## II. STATEMENT OF FACTS

### A. Summary of the Litigation

The operative Second Amended Complaint alleged nine separate causes of action against Defendants for: 1) violation of the Fair Labor Standards Act; 2) failure to pay California overtime wages; 3) failure to pay California minimum and contractual wages; 4) failure to comply with California rest period requirements; 5) failure to comply with California meal period requirements; 6) failure to pay timely wages under California law; 7) failure to provide accurate itemized wage statements; 8) violation of California's unfair competition law; and 9) a claim for penalties under the Labor Code Private Attorneys' General Act ("PAGA").

Prior to commencing the action, Class Counsel conducted extensive due diligence, including review of documents produced by Plaintiffs and interviewing them in detail regarding their working conditions and Defendants' wage payment practices. Following these investigative efforts, Class Counsel determined that the case was suitable for class treatment and that Plaintiffs would be adequate class representatives. After commencing the action, Plaintiffs conducted significant amounts of written discovery, and Defendants produced documents, including payroll and timekeeping records for Class Members during the Class Period. Class Counsel engaged in extensive review of these records and assembled a comprehensive damages model in advance of mediation. Plaintiffs also obtained sufficient evidence to establish the existence of a class, as set forth in this Court's class certification order. In a nutshell, the investigation and discovery conducted herein was thorough and elaborate, putting the parties in an excellent position to assess the strengths and weaknesses of the case, as well as its value. Mallison Decl. ¶ 34.

### B. Settlement Negotiations

In connection with the aforementioned discovery efforts, the parties agreed to mediate the case and proceeded to do so before Judge Kevin Murphy of ADR Services, Inc. The first session in April 2020 did not yield a settlement. In August 2020, the Court issued a ruling on Plaintiffs'

motion for class certification, granting it in part and denying it in part. With the benefit of that ruling, the parties returned to the negotiating table in October 2020. These further negotiations, while spirited, still did not yield a settlement. Finally, in February 2021, at a settlement conference with U.S. Magistrate Judge Joseph C. Spero, the parties reached an agreement on the essential terms of settlement. The data points, discovery, and issues presented during the mediations and ensuing settlement discussions allowed the parties to intelligently evaluate the prospects of prevailing on the merits. Ultimately, these efforts resulted in the parties reaching the instant Settlement which Plaintiff now presents to the Court for preliminary approval. Mallison Decl. ¶¶ 17-23.

### III. SUMMARY OF SETTLEMENT TERMS

#### A. The Maximum Settlement Consideration

Under the Settlement, Defendants are obligated to pay the Gross Settlement Amount of $1,100,000. Settlement § III.A. Defendants will fund the Settlement with a lump sum of $400,000 within twenty days of final approval, and will pay the balance in eight quarterly payments of $75,000 and a final payment of $100,000, no later than 820 days after final approval. Settlement § III.B. The Settlement provides that all of the Gross Settlement Amount will be disbursed to Participating Class Members, and none of it will revert to Defendant. Settlement § III.A. The Settlement provides for: payment to the Class Representatives (subject to court approval) of up to $7,500 as compensation for their role as Class Representatives (Settlement § III.C.1), payments to Class Counsel of up to one-third of the gross settlement for their reasonable attorneys' fees, as well reasonable litigation expenses incurred in investigating and prosecuting the case, not to exceed $12,000 (Settlement § III.C.2), payment of up to $37,500 to the Labor and Workforce Development Agency (Settlement § III.C.3), the required payroll taxes, estimated to be $11,840.20 (Settlement § I.P; Kline Decl. ¶ 15), and payment of the Settlement Administrator's reasonable fees and expenses ($3,499) Settlement § III.C.4. All reasonable efforts will be undertaken by the Settlement Administrator and by Class Counsel to ensure that Class Members receive their settlement shares in this case.

After the other amounts are deducted from the Gross Settlement Amount, the "Net Settlement Amount" will be distributed to all Participating Class Members on a pro rata basis, calculated by dividing the Net Settlement Amount by the total number of workweeks worked by each Class Member from January 23, 2015 to September 30, 2019 (the "Class Period"):

> After deducting the Class Representative Payments, Class Counsel Fees and Litigation Expenses payments, payments to the LWDA, required payroll taxes, and the Settlement Administrator's fees and expenses, each Participating Class Member shall be eligible to receive a tiered pro rata share of the balance of the Net Settlement Amount. The settlement payments will be reduced by any required legal deductions for each Participating Class Member. The Settlement Share for each Participating Class Member will be based on (a) that Participating Class Member's total number of workweeks in which the Class Member was employed by Defendants during the Class Period (b) divided by the aggregate number of workweeks for Defendants of all Participating Class Members during the Settlement Class Period (c) multiplied by the value of the Net Settlement Amount.

Settlement § III.E.1.

The estimated Net Settlement Amount is illustrated with the following table:

| Gross Settlement Amount | $1,100,000 |
|---|---|
| Attorneys' Fees | -      $366,667 |
| Litigation Costs | -      $12,000 |
| Enhancement Awards | -      $75,000 |
| Settlement Administration | -      $3,499 |
| LWDA Payment | -      $37,500 |
| Employer Taxes | -      $11,840.20[2] |
| Net Settlement Amount | **=  $593,493.80** |

Thus, based on there being 71 Class Members, the average net recovery per Class Member is **$8,359.07**, and the highest is estimated to be $18,993.90 (*see* Kline Decl. ¶¶ 15-16)—an excellent result for the Class.

---

[2] Plaintiffs erroneously failed to include the employer taxes in this calculation at the preliminary approval stage. However, the decreased number of Class Members (from 84 to 71) roughly offsets this corresponding reduction of the Net Settlement Amount, with the average estimated payment only being decreased by about $167 (i.e., from $8,526 to $8,359).

The Net Settlement Amount will be disbursed in two distributions. The first distribution will be made following the second quarterly payment, at which point the settlement fund should equal $550,000. The first distribution will pay all Class Representative payments approved by the Court, the entire payment to the LWDA, and a first pro rata distribution to participating Class Members. Settlement § III.C.5.a. The second distribution shall occur after the final quarterly payment and will pay Class Counsel's attorneys' fees and costs, payment to the Settlement Administrator, and a second pro rata distribution to Participating Class Members. Settlement § III.C.5.b.

## B. The Court Ordered Class Notice Was Completed.

The Court's Preliminary Approval Order was entered on November 30, 2021. The notice and notice plan approved by the Court was effectuated by the Settlement Administrator, Simpluris, Inc. Simpluris mailed the notice on December 23, 2021. *See* Exhibit 2, Kline Decl., ¶ 8. The notice period expired on February 1, 2022. *Id.* at ¶ 10. As of this date, Simpluris has not received any Requests for Exclusion from Class Members, Objections to the Settlement, or disputes. *Id.* at ¶¶ 11-13.

## C. Tax Consequences of Settlement Payments

For the purpose of calculating applicable taxes for the payments to Participating Class Members, the parties agree that fifteen percent (15%) of each settlement payment is intended to settle wage claims. Settlement § III.E.2. Accordingly, an appropriate withholding will be made from those payments and W-2 Forms will be issued for the wage portion of each Settlement Share. *Id*. Moreover, the Parties agree that eighty-five percent (85%) of each Settlement Share (the non-wage portion) is intended to settle claims for penalties and interest. *Id.* The applicable taxes shall be calculated by the Settlement Administrator. *Id.* The Settlement Administrator will issue a Form 1099 with respect to the non-wage portion. *Id*.

## D. Payment of Settlement Shares

After the other amounts are deducted from the Gross Settlement Amount, the Net Settlement Amount will be distributed as Settlement Shares to all Participating Class Members in two distributions. Settlement § III.C.5. Settlement Shares will be calculated on a pro rata basis

according to the number of workweeks each Participating Class Member worked during the Class Period. Settlement § III.E.1. Class Counsel has reviewed the proposed method of distribution and has determined that, on the whole, it serves the purpose of providing a relatively simple and readily determinable method for distribution, while also allowing for a distribution that reasonably corresponds to the alleged damages and likely recoveries, which are based upon various theories of liability. Mallison Decl. ¶ 31.

### E.     PAGA Penalty Payment to the State

As the class claims for unpaid wages and meal/rest break violations formed the primary basis for liability, as opposed to the PAGA claim, and given the wide discretion the Court has to reduce an onerous penalty award (*see* Cal. Lab. Code § 2699(e)(2); *Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp.3d 1058, 1099-100 (N.D. Cal. 2019) (reducing PAGA penalty award on basis that awarding maximum amount "would be unjust and oppressive")), the parties have agreed that a penalty payment to the Labor and Workforce Development Agency of up to $37,500 (i.e., 75% of $50,000) is reasonable under the circumstances. Mallison Decl. ¶ 39.

### F.     Distribution of Un-Cashed Checks

The Settlement does not allow for reversion of any portion of the Net Settlement Amount to Defendants, and any Settlement Shares that remain uncashed after the 180 days from issuance will be distributed to a cy pres recipient, i.e., CRLA and/or LAAW, subject to court approval. Settlement § III.C.5.b.i.

### G.     Scope of Release

The scope of the release by Participating Class Members closely tracks the claims made in this case. It covers all claims under state and federal law arising from, related to, or which were or could have been made against Defendants based on the facts alleged therein. Settlement § III.G.3. Moreover, the class release does not contain a Civil Code § 1542 waiver. *Id.*

### H.     Settlement Administration

Simpluris has been appointed the Settlement Administrator and has carried out its duties. Exhibit 2, Kline Decl. The Settlement Administrator's duties are detailed in the Settlement. With

this motion, Plaintiffs request that Simpluris be awarded $3,499 for its role in facilitating the distribution of the notice and forthcoming payments. Exhibit 2, Kline Decl., ¶ 17.

### 1. Payment to Plaintiffs, Class Counsel Attorneys' Fees Payment, and Class Counsel's Costs Payment

Through this motion, Class Counsel seeks an award of up to $7,500 each to Plaintiff as compensation for their service as Class Representatives and the risks they faced and continue to face in having their name attached to this federal class action lawsuit. Settlement § III.C.1. Class Counsel will also seek an award of attorneys' fees of one-third of the Gross Settlement Amount ($366,667), plus reasonable costs of $12,000. Settlement § III.C.1-2.

## IV. THE MOTION FOR FINAL APPROVAL SHOULD BE GRANTED

The law favors voluntary settlement of disputes, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Officers for Justice v. Civil Srv. Comm'*, 688 F.2d 615, 625 (9th Cir. 1982); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); and 4 Timothy Eble et al., Newberg on Class Actions § 11.41 (Alba Conte & Herbert B. Newberg eds., 4th ed. 2002 & Supp. 2008) (and cases cited). Indeed, settlement of complex cases contributes greatly to the efficient utilization of scarce judicial resources and achieves the speedy resolution of justice, for "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Anti-Trust Lit. II*, 659 F.2d 1322, 1325 (5th Cir. 1981).

Pursuant to Federal Rule of Civil Procedure 23(e), "[A] class action shall not be dismissed or compromised without the approval of the Court. . . ." District courts are afforded broad discretion in determining whether to approve a proposed class action settlement. Indeed, "evaluation of [a] proposed settlement in this type of litigation . . . requires an amalgam of delicate balancing, gross approximations and rough justice," and the trial court's ruling on the adequacy of a proposed compromise is given great deference. *City of Detroit v. Grinnell Corp.*, 356 F.Supp. 1380, 1385 (S.D.N.Y. 1972), *aff.'d in part and rev.'d in part on other grounds*, 495

-8-

F.2d 448 (2d Cir. 1974). Although the court possesses "broad discretion" in determining that a proposed class action settlement is fair, the court's role "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625 (internal quotation marks and citation omitted). Accordingly, the court should give due regard to what is otherwise a "private consensual agreement" between the parties. *See id.*; *Church v. Consolidated Freightways, Inc.*, 1993 WL 149840, at *2 (N.D. Cal. May 3, 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992); and Manual for Complex Litigation, Fourth, § 21.61 at 309 ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement."). A court's approval of a class action settlement will only be reversed for a clear abuse of discretion. *See Officers for Justice*, 688 F.2d at 626 ("[W]e reverse only upon a strong showing that the district court's decision was a clear abuse of discretion"); and *City of Seattle*, 955 F.2d at 1276; *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).

On a motion for final approval of a class action settlement, a court's inquiry is whether the settlement is "fair, adequate and reasonable." Fed. R. Civ. P. 23(e)(1)(C); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation, Fourth, § 21.6 at 309.

In conducting this analysis, however, the district court should not require the proponents of a settlement in a class action to stage a mini-trial on the merits, the very event that settlement aims to preclude. *See In re Armored Car Anti-Trust Lit.*, 472 F.Supp. 1357, 1367 (N.D. Ga. 1979), *aff'd. in part and rev'd. in part on other grounds*, 645 F.2d 488 (5th Cir. 1981). Moreover,

the Court should not seek to substitute its judgment of what is fair for that reached by the parties in their arm's-length negotiations. *See* 7B *Charles Alan Wright et al.*, Federal Practice & Procedure § 1797.5 (3d ed. 1998); *see also* Manual for Complex Litigation, Fourth, § 21.61 at 309.

Where adversarial negotiation by capable counsel is evident, it is presumed that the resulting class settlement is fair. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *cert. denied sub nom.*, *Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc.*, 544 U.S. 1044, 125 S. Ct. 2277, 161 L. Ed. 2d 1080 (2005) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'") (*quoting* Manual for Complex Litigation, Third § 30.42 (1995)); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006); 4 Timothy Eble et al., Newberg on Class Actions § 11.41 (Alba Conte & Herbert B. Newberg eds., 4th ed. 2002 & Supp. 2008). Finally, in evaluating the settlement, the court is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *Officers for Justice*, *supra*, 688 F.2d at 625.

The Ninth Circuit has established the following factors to consider in determining whether a settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement [presumably in comparison to comparable cases]; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Churchhill Village v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (numbers added); *In re Omnivision Technologies, Inc.*, 2008 WL 123936 (N.D. Cal, January 9, 2008). Under these standards, the proposed Settlement is fair, reasonable and adequate.

### A. The Strength of Plaintiffs' Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." 5 *Moore's Federal Practice* § 23.85[2][b] (Matthew Bender 3d. ed.). However, in balancing these factors, "a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.* As noted by the Ninth Circuit:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, *supra*, 688 F.2d at 625.

Although Plaintiffs believe strongly in the underlying merits of their case, wage and hour cases can difficult to prove on a class basis especially given the changing and uncertain legal environment. Further, there are clear uncertainties surrounding Plaintiffs' ability to prove their claims given the unpredictability of a lengthy and complex jury trial. Given the nature of the claims, this factor weighs in favor of settlement. Even if proven at trial, claims are not large and consist largely of the payment of some minimum or near minimum wages to these workers.

### B. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Another relevant factor is the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Timothy Eble et al., *Newberg on Class Actions* § 11.41 (Alba Conte & Herbert B. Newberg eds. 4th ed. 2002 & Supp. 2008). As observed in *Oppenlander v. Standard Oil Co. (Ind.)*, 64 F.R.D. 597 (D. Colo. 1974):

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

64 F.R.D. at 624. *See also Santos v. Camacho*, 2008 WL 1699448 (D. Guam, April 10, 2008)

Hence, the Court must balance the risks of continued litigation against a certain and immediate recovery for the Plaintiff Class. There are significant risks in continued litigation, such as bankruptcy on the part of Defendants, the risk that Plaintiffs would not prevail on the merits, and appeals which could delay resolution of the case for years to come. Against all of these uncertainties, a prompt and certain payout amounting to approximately $8,359.07 per claimant appears to be a better option than continuing litigation. *See also Chiaramonte v. Pitney Bowes, Inc.*, 2008 WL 510765 (S.D. Cal. 2008).

## C.    The Risk of Maintaining Class Action Status Throughout Trial

Although Plaintiffs are confident in their abilities to prosecute and manage this case, there is significant risk that the case may not survive a potential decertification motion, should any manageability issues arise at trial.

## D.    The Amount Offered in Settlement

Plaintiffs believe that the recovery obtained of $1,100,000 or approximately $8,359.07 per claimant net of all expenses is a good settlement result in a wage and hour case involving blue collar workers. While it is not designed to provide full recovery possible, the Ninth Circuit has noted, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Linney*, *supra*, 151 F.3d at 1242 (citation and internal quotation marks omitted). As such, there is no suggestion that for a settlement to be approved, the settlement amount has to consist of a full and complete recovery of all claims.

## E.    The Extent of Discovery Completed, and the Stage of the Proceedings

In determining the adequacy of the parties' knowledge of the case, it may be relevant to consider the extent of discovery. A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Here, Plaintiffs conducted significant discovery ultimately procuring all of the core timekeeping and payroll documents in this case, including expert review and analysis thereof, and certified a class. Plaintiffs' litigation and mediation of this case was informed by a thorough review of these documents and based on Plaintiffs' expert analysis. Further, by the time the settlement was reached, the litigation had proceeded to a point in which

both Plaintiffs and Defendants "ha[d] a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec Litig.*, 618 F Supp 735, 745 (S.D.N.Y. 1985) *aff'd* 798 F.2d 35 (2d Cir. 1986).

### F. The Experience and Views of Counsel

The Settlement Agreement was presented to the court after extensive negotiations among the settling parties. In reviewing the opinions of counsel, "great weight" is accorded to the recommendation of the attorneys. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). They are the ones who are most closely acquainted with the facts of the underlying litigation. *Id.* "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Hanrahan v. Britt*, 174 F.R.D. 356, 366-368 (E.D. Pa. 1997) (presumption of correctness applies to a class action settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery) (citing *Manual for Complex Litigation*, Second, § 30.41 (1985), *and Ratner v. Bennett*, No. 92-4701, 1996 WL 243645, *5 (E.D. Pa. May 8, 1996).

Here, Class Counsel were in the thick of the litigation and understood the complex weighing of risks and delay inherent in any settlement. It was Class Counsel's conclusion that the settlement proposed here was a good result and created a certain outcome rather than a contingent claim.

### G. The Presence of a Governmental Participant

The only governmental participant here is the State of California in connection with the PAGA claim. Pursuant to PAGA, the State of California has deputized Plaintiffs to stand in its to enforce the Labor Code on behalf of the State and employees. As a result, Plaintiffs stand as a proxy for the State and have obtained $37,500 for the State of California – a factor weighing in favor of approval. *Arias v. Sup. Ct*, 46 Cal.4th 969 (2009). Further, Plaintiffs submitted the

-13-

Settlement to the LWDA on August 27, 2021, and there has been no objection by the Agency. Mallison Decl. ¶ 39.

### H. The Reaction of the Class Members to the Proposed Settlement

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." 5 *Moore's Fed. Practice* § 23.85[2][d] (Matthew Bender 3d ed.). The Class Representatives' opinion of the settlement is especially important as "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class." *Manual for Complex Litigation*, Third, § 30.44 (1995). Here, this factor weighs strongly in favor of approval, as there have been no opt-outs or objections to the Settlement. Exhibit 2, Kline Decl. ¶¶ 11-12. Further, the Class Representatives clearly support the Settlement, as evidenced not only by having agreed to it, but as stated in their declarations submitted herewih. *See* Exhibit 3, Class Representative Declarations.

## V. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

To complete the formal settlement approval process, the Court must satisfy itself that the requirements of Federal Rule of Civil Procedure 23 are met. Every requirement of Rule 23 is satisfied with respect to this proposed settlement class.

### A. The Numerosity Requirement Is Met.

Rule 23(a)(1) allows a class action to be maintained if "joinder of all members is impracticable" owing, in primary part, to the large number of people in the proposed class. Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In satisfying this requirement there is no exact numerical cut-off; the specific facts of each case must be examined to determine if impracticability exists. *See, e.g.*, *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). A finding of numerosity can be demonstrated through common sense assumptions. *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 239 (E.D.N.Y. 1998). In this case, the Settlement Class consists of 71 members. The size of this proposed class renders joinder impracticable.

-14-

### B.    The Commonality And Typicality Requirements Are Met.

Rule 23(a)(2) allows a class action to be maintained if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Rule 23(a)(3) requires that "the claims or defenses of the representative parties [must be]…typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The test requires that the class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156. Here, the litigation and the settlement revolve around issues of unpaid minimum wages, overtime, and rest and meal period violations. As such, the commonality requirement is met.

The typicality requirement is also met in this case. Each of the Class Representatives has claims similar and typical of the rest of the Class since they suffered similar injuries and have the same interest in redressing them.

### C.    The Named Plaintiffs and Class Counsel Are Adequate Class Representatives

Rule 23(a)(4) requires that the named plaintiff and proposed Class Counsel be able to "fairly" and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, *supra*, at 1020.

This Court already resolved this issue when it appointed class representatives and class counsel at the preliminary approval stage. *See* Mallison Decl. ¶ 41. Nothing has changed since this order was issued that would suggest a basis for altering this conclusion.

### D.    Certification Under Rule 23(b)(3) Is Appropriate For Settlement Purposes.

In addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), an action must satisfy one of the requirements of Rule 23(b) to be certified for class treatment for

-15-

settlement purposes. *See Hanlon*, 150 F.3d at 1022; *and In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). In particular, the court must find that 1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and 2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Here the issues of Plaintiffs' allegations create common issues that predominate over individual questions. With regard to superiority, Rule 23(b) provides four determining factors. Fed. R. Civ. P. 23(b). The first factor for consideration is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor is more relevant where each class member has suffered sizeable damages or has an emotional stake in the litigation. *See, e.g., In re N. Dist. of Cal., Dalkon Shield, Etc.*, 693 F.2d 847, 856 (9th Cir. 1982). Here, where the monetary damages each Plaintiff individually suffered are relatively modest, certifying a class action is favored. *Id.* By contrast, the litigation costs would dwarf any recovery obtainable in an individual action.

The second factor to consider is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). The only known litigation concerning the controversy is this case at issue in this settlement. This weighs heavily in favor of class certification in this case.

The third factor to consider is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). However, the context of settlement, the desirability or undesirability of concentrating the litigation of the claims in a particular forum is not significant and is essentially irrelevant. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231 (1997) (stating that where a district court is confronted with a settlement-only class certification, the court need not inquire whether the case, if tried, would present manageability problems because the point is that there will be no trial). For the purposes of settlement, concentrating litigation in one forum is desirable.

The fourth and final factor is "the difficulties likely to be encountered in the management of a class action." This factor is commonly described as the manageability issue,

-16-

"encompass[ing] the whole range of practical problems that may render the class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). However, for purposes of certifying a class for settlement purposes, this Court need not consider this factor. *Amchem*, *supra*, 521 U.S. at 620 (a district judge faced with a request to certify a settlement class "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)).

These decisions are consistent with the U.S. Supreme Court's recognition in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), that while a proposed settlement class must meet all the requirements of Rule 23, the court need not assess whether the manageability requirement of Rule 23(b)(3) is met because the parties do not propose to litigate the case. *See Amchem* at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there is no 'trial'"). Accordingly, recognizing that the parties here propose a class settlement this Court need only inquire whether the proposed Settlement Class is sufficiently cohesive with respect to the relevant factual and legal issues as to make a class wide settlement process fair. *See Amchem*, 521 U.S. at 623; *and Warfarin*, *supra*, 391 F.3d at 528. Accordingly, the settlement class should be finally certified.

## VI. CLASS COUNSELS' REQUESTED FEE AND COSTS ARE REASONABLE

### A. The Requested Fee is within the Range of Fees Awarded in this Circuit

Class Counsel respectfully requests that the Court approve the fees and costs to be paid in this action. Class Counsel seeks an award of one-third of the common fund, or $366,667, which is significantly less than Plaintiffs' lodestar of $542,067.84 in this case. Courts have long recognized the "common fund" or "common benefit'" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. *See, e.g.*, *Hanlon*, 150 F.3d at 1029; *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole,"

*quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989). The percentage of common fund is particularly appropriate "'when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.'" *Staton*, 327 F.3d at 972, *quoting Boeing Co.*, 444 U.S. at 478-79. Here, the Settlement sets forth a specific lump sum to the Settlement Class, as well as a distribution formula through which each Class Member who does not opt-out will receive a mathematically ascertainable payment, making the percentage of common fund doctrine appropriate.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *see Activision*, 723 F.Supp. at 1377-78 ("nearly all common fund awards range around 30%"); In *Romero v. Producers Dairy Foods, Inc.*, the court approved an attorneys' fee award that was 33% of the settlement fund in a wage-and-hour case involving allegations of unpaid wages and missed meal and rest breaks. No. 05-0484, 2007 WL 3492841, at *4 (E.D.Cal. Nov.14, 2007). The *Romero* court noted that "fee awards in class actions average around one-third of the recovery." *Id*. (*quoting* Newberg on Class Actions § 14.6 (4th ed.2007)). *See also In re AIA Indus., Inc. Sec. Litig., No.* 84-2276, 1988 WL 33883 (E.D.Pa. March 31, 1988) (33% of common fund awarded).

## B. The Circumstances of This Case Support a 33 1/3% Fee Award

When assessing whether the percentage requested is reasonable, courts look to factors such as (a) the results achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the contingent nature of the fee and the financial burden; and (f) the awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990). All of these factors support the fee requested in this action.

-18-

Class Counsel provided experienced, competent representation and obtained significant results for the Class Members, all while prosecuting the case on a contingency basis, which presented considerable risk for Counsel. As articulated by one Southern District of New York court:

> No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-398 (S.D.N.Y. 1999) (describing the overwhelming weight of federal authority in favor of the percentage fee method).

### 1. The Results Obtained

First, the recovery in this case is very good. The individual claims in the case were never huge, as they revolved around Defendants' failure to pay Class Members for portions of overtime hours worked and a failure to proper provide rest and meal periods. Such facts do not generally produce recoveries in the many thousands of dollars per claimant. Yet, the recovery of $1,100,000 will provide the 71 claimants with a net recovery of approximately $8,359.07 per employee on average. This is a very good recovery for a case involving blue collar auto body shop workers.

In addition, the excellent results achieved by the Settlement are demonstrated by the absence of any objections to either the Settlement or to Class Counsel's request for fees, both of which were described clearly in the Notice. As of the date of this filing *no individuals submitted elections not to participate and no class member has submitted an objection to the Settlement*. Exhbit 2, Kline Decl. ¶¶ 11-12.

### 2. The Risks Involved

Second, there were significant risks in pursuing this case. As in any class action, the Court had wide discretion to grant or deny certification, and the risk existed that no class would be certified. Even more dangerous was the Defendants' financial condition in light of the post-2020 economy, including the real risk that Defendants would declare bankruptcy and the class would recover nothing.

### 3. The Skill Required

Third, this case required exceptional skill in obtaining the relevant pay and time records, performing an expert analysis thereon, certifying a class, and securing Defendants' agreement to pay the amount agreed upon in the Settlement. Very few firms have the expertise to be able to effectively and efficiently carry out these tasks. Class Counsel are extremely experienced in class action wage and hour litigation. *See* Mallison Decl. at ¶¶ 4-6. Class Counsel's skills in developing an extensive damage analysis and convincing Defendant of its litigation exposure under California law were essential to achieving the Settlement. Through their skill and reputation, Class Counsel were able to obtain a settlement that provides an outstanding result for Settlement Class Members.

### 4. The Quality of the Work

Fourth, the quality of the work was exceptional. Counsel thoroughly investigated the case, certified a class, and convinced Defendants to pay a settlement amount that provides sizeable payments to the Settlement Class Members.

### 5. The Contingent Nature of the Fee and the Financial Burden

Fifth, this case was taken entirely on a contingent fee basis against well represented Defendants. Counsel has received no money from Plaintiffs or any other source to litigate this case. The Plaintiffs are all blue collar workers who could never meaningfully contribute to any such expenses. Plaintiffs' counsel accepted the entire risk of litigation in this case and bore all expenses. Even though class certification was granted over Defendants' opposition, there was no assurance that Plaintiffs would succeed at trial. Despite such challenges, Class Counsel were able to persuade Defendants that they faced significant liability exposure such that they were willing to pay $1,100,000 to settle Plaintiffs' claims.

### 6. Awards made in similar cases.

Sixth, the requested fee is in line with similar class action wage and hour cases on behalf of mechanics which Plaintiffs' counsel has litigated and settled. *See Sandoval, et al. v. Autowest Collision Repairs, Inc., et al.*, Cal. Northern District, Case No. 3:13-CV-03230 (awarding 33 1/3%); *Selby, et al. v. TWC Dealer Group, Inc., et al.*, Contra Costa Superior Court, Case No.

-20-

C18-00247 (same); *Ontiveros v. Zamora Automotive Group, et al.*, Cal. Eastern District, Case No. 2:08-CV-00567 (same).

Notably, California wage and hour class action cases are typically litigated in state court and these courts generally reflect fee awards in wage and hour cases of 25-40%. *See e.g. Walgreens Overtime Cases*, JCCP No. 4387 (Coordinated Actions) (31% fee award); *Collins v. Aaron Bros.*, LASC No. BC 208856 (33 1/3% fee award); *Gallegos v. Office Depot*, Santa Clara Sup. Ct., Case No. CV 797847 (33 1/3% fee award); *Chalmers v. Electronics Boutique*, LASC Case No. BC306571 (33% of common fund); benchmark and citing cases). In addition to the above factors, Plaintiffs' counsel has been precluded from other employment as a result of this litigation. Class Counsel's commitment to this litigation should not be overlooked in assessing the reasonableness of the fee request. Mallison Decl. ¶ 48.

### C. Class Counsel's Request for Costs is also Reasonable

In the course of this litigation, Class Counsel had to incur out-of- pocket costs totaling $12,956.83, and expect to incur modest additional in costs related to the final approval of the Settlement. *See* Mallison Decl. ¶ 47. The bulk of the incurred costs included mediation fees, massive discovery costs, including deposition, numerous filing fees, and Plaintiffs' other expert discovery and investigative costs.. *Id.* Such costs are appropriate for cost reimbursement in these types of cases. *See, e.g.*, *In re United Energy Corp. Sec. Litig.*, 1989 WL 7321 1, at *6 (C.D. Cal. 1989) (*quoting Newberg*, Attorney Fee Awards, § 2.19 (1987)); *see also*, *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987). Plaintiffs believe that these fees are reasonable and typical in this area. The actual costs incurred exceed the estimated $12,000, which was included in the Class Notice and to which no Class Member objected, and Plaintiffs only seek to recover that capped amount. In light of the litigation costs that Class Counsel needed to incur to prosecute this action and the positive reaction of Class Members, the request for reimbursement of costs of $12,000 is reasonable and should be granted.

### VII. CLASS REPRESENTATIVE'S ENHANCEMENT IS ALSO REASONABLE

Pursuant to the Settlement Plaintiffs seek enhancement awards in the amount of $7,500 each. *See* Settlement § III.C.1. These payments are intended to recognize the time and efforts

-21-

that the named Plaintiffs spent on behalf of the Class Members. *See* Exhibit 3, Class Representative Declarations. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (internal quotations and citations omitted); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). In *Coca-Cola*, the Court approved service awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also*, *e.g.*, *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 participation award to plaintiffs); *Glass v. UBS Financial Services, Inc.*, Case No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each named plaintiff).

In this case, the named Plaintiffs performed the following tasks, among others: (1) assisted Counsel in investigating and substantiating the claims alleged in this action; (2) assisted in the preparation of the complaint in this action; (3) produced evidentiary documents to Counsel; and (4) assisted in the settlement of this litigation. *See* Mallison Decl. ¶ 41; Exhibit 3, Class Representative Declarations. Moreover, as with any plaintiff who files a civil action, Plaintiffs undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for any costs awarded in favor of the Defendant. *See*, *e.g.*, *Whiteway v. Fed Ex Kinkos Office & Print Services, Inc.*, No. C 08-2320 SBA, 2007 WL 4531783, at **2-4 (N.D. Cal. Dec. 17, 2007).

Not a single Class member objected to the enhancements requested on behalf of the named Plaintiffs who brought this litigation on their behalf. In the aggregate, the enhancement represents only a small percentage of the total settlement value. The total amount requested for a service award is $75,000 for all the class representatives, which is less than 7% of the total settlement value. In light of the work that the named Plaintiffs performed on behalf of Class Members, and the Class Members' response to the Settlement, the requested enhancements are reasonable and appropriate.

Notably, the class representatives also sacrificed any additional claims that they may have against the Defendants whether they be related to the claims raised in this case or not. This sacrifice was a condition of the Settlement for Defendants. As such, these rights were sacrificed by Plaintiffs for the benefit of the class.

## VIII. THE FEES OF SIMPLURIS, INC. SHOULD BE APPROVED.

The Class Notice provided for fees for the Settlement Administrator of up to $3,499. The tasks completed by Simpluris is documented in the Kline Declaration submitted with this brief. *See* Exhibit 2, Kline Decl. These fees are reasonable and should be approved.

## IX. CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court grant this motion in its entirety and enter an order: (1) certifying the Settlement Class; (2) granting final approval of the Settlement; (3) awarding class representative payments of $7,500 each to Plaintiffs; (4) awarding attorneys fees of $366,667 to Mallison & Martinez (5) awarding attorneys' costs of $12,000 (6) awarding Simpluris, Inc. fees of $3,499; (6) Awarding the California LWDA $37,500 and (7) granting judgment in the case.

Dated: February 17, 2022                     **MALLISON & MARTINEZ**

By:    Stan Mallison
       Hector R. Martinez
       Daniel C. Keller

       Attorneys for Plaintiffs